## REDFEARN v. CRAIG.

1. PRACTICE.—COMPLAINT in foreclosure after judgment of sale not appealed from, cannot be dismissed because other issues raised thereby cannot be sustained.

2. ADMINISTRATOR.—THE ADMINISTRATOR *de bonis non* of B. is the owner and holder of a bond executed to A., administrator of B., for moneys loaned out of estate of B., and is proper person to sue such bond.

3. EQUITY—CONTRACTS.—An agreement by A. to purchase certain lands of B., and to pay as consideration debts due by B. to D. and E., upon execution of deed by B., and delivery in escrow to be given to A. upon payment of such debts, B. putting A. in full possession, and

upon payment of debt due E., in full and part payment of debt due D., is such as D. can enforce in equity against A.

4. RES JUDICATA.—A judgment creditor neglecting to answer fore-closure complaint alleging some claim by him on mortgaged premises, cannot afterwards set up any claim thereto.

Before GARY, J., Chesterfield, August, 1898.    Modified.

Action by Elijah N. Redfearn, as administrator *de bonis non,* of Thos. F. Mulloy, against Thos. P. Craig, William D. Craig, Edward F. Mulloy, and judgment creditors of said Edward F. Mulloy.    The plaintiff and the defendants, Thos. P. and W. D. Craig, appeal from the Circuit decree upon numerous exceptions, alleging error in specific findings, but they all together raise substantially the questions answered in the opinion.

*Mr. W. S. Blakeney,* for plaintiff, and Thos. P. Craig, appellants, cites: *As to right of plaintiff to maintain this action:* 35 S. C., 165; 51 S. C., 164; 1 Hill L., 92; 5 Stat., 19; 2 Bay, 321; Rev. Stat., 2105; 13 Rich. Eq., 271; 2 Hill Ch., 267; Rev. Stat., 2076. *Liability once incurred cannot be escaped:* 1 McC. Ch., 221; 2 S. C., 410; Rich. Eq., 16; 1 Strob., 103; 4 Rich. L., 268; 1 Rich. L., 268; 14 S. C., 437. *This action sufficient for adjudication of all issues:* 2 Hill Ch., 111; 2 Strob., 29; 10 Rich. Eq., 60; 4 Strob., 121; 5 Rich. Eq., 333, 532; 47 S. C., 462; 42 S. C., 319.    *Facts take case out of statute of frauds:* 1 Rich. Eq., 130; 9 S. C., 265; 16 S. C., 384; 27 S. C., 384; 29 S. C., 79; 21 S. C., 491; 27 S. C., 363; 40 S. C., 134; 4 Exch., 631; 1 DeS., 297; 4 DeS., 77; Harp. E., 258; 3 S. C., 295; 34 S. C., 499; 39 S. C., 356; 26 S. C., 90.    *As to alleged incumbrances:* 24 S. C., 424; 26 S. C., 10, 227; 37 S. C., 118; 44 S. C., 308; 25 S. C., 389.

*Messrs. Stevenson & Matheson,* for W. P. Craig, appellant and respondent, cite: *As to the right to force Craig to take an encumbered title:* 6 S. C., 180; 7 S. C., 340; 8 Rich. Eq., 247; 1 DeS., 382; 44 S. C., 195; Rich. Eq. Ca., 235; 7

S. C., 47. *Where vendor contracts for something in lieu of performance, he cannot have specific performance:* 11 Rich. Eq., 225; 21 L. R. A., 133; 21 S. C., 411. *As to want of privity of contract:* 24 S. C., 321; 98 U. S., 123; 109 U. S., 194; 14 S. C., 437; 4 Rich. L., 374; 1 Rich. L., 268; Rich. Eq. Ca., 5. *As to right of plaintiff to maintain this action:* 13 Rich. Eq., 270; 1 Bail., 126; 1 Hill Ch., 25; 5 Strob. L., 72. *States where by Stat. adm. de bonis non can sue:* 6 Ala., 399; 7 Ind. App., 45; 65 Ia., 475; 17 Kans., 47; 3 Met., 147; 9 Dana, 428; 7 J. J. Marsh, 188; 2 Bush., 40; 1 B. Mon., 58; 3 N. C., 60; 2 Swan., 127. *Where statutes do not give right he cannot as a rule:* 11 Ga., 599; 5 Ga., 56; 14 Ill., 338; 5 Gill., 228; 6 Harr. & J., 241; 15 Mo., 89; 69 Mo., 58; 9 Mo., 573; 7 Mo., 57; 98 N. Y., 511; 56 How. Pr., 282; 103 Penn., 616; 153 Penn., 345; 2 Peur. & W., 482; 3 Rowle., 361; 25 W. Va., 465; 112 U. S., 83.

April 28, 1900. The opinion of the Court was delivered by

Mr. JUSTICE POPE. This action was commenced 25th April, 1896. In order to understand the appeal, it will be better for us to have the pleadings reproduced. The complaint was as follows (omitting caption and formal openings) : "I. That on or about the 8th day of September, in the year of our Lord 1884, the above named defendants, Thomas P. Craig and Edward F. Mulloy, made, executed and delivered to William A. Mulloy, as administrator of Thomas F. Mulloy with the will annexed, their obligation under seal, commonly called a bond, in the penal sum of $1,100, conditioned for the payment of the full and just sum of $550, with interest, on the first day of January, in the year of our Lord 1885. II. That the said defendants, Thomas P. Craig and Edward F. Mulloy, on the day and year aforesaid, to wit: on the 8th day of September, in the year of our Lord 1884, made, executed and delivered to the said William A. Mulloy, as administrator aforesaid of the said Thomas F. Mulloy, deceased, with the will annexed, their mortgage

deed, and thereby conveyed to the said William A. Mulloy, as administrator aforesaid, by way of mortgage, the following lands and tenements, situate in the county of Chesterfield, to wit: * * * The condition contained in said mortgage deed was in substance that if said Edward F. Mulloy and Thomas P. Craig should pay or cause to be paid the aforesaid sum of money, with the interest thereon, when the same should become due, then this deed of bargain and sale should cease, determine and become utterly null and void, otherwise it should remain in full force and virtue. III. That on the 8th day of September, in the year of our Lord 1884, the said mortgage deed was delivered to the register of mesne conveyance for the county of Chesterfield, to be by him entered of record and was recorded on the same day. IV. That on or about the    day of September, in the year of our Lord 1887, the said William A. Mulloy died intestate, never having fully administered the estate of his intestate, and soon thereafter letters of administration *de bonis non* were duly granted to this plaintiff by the probate court of Chesterfield County upon the estate of the said Thomas F. Mulloy, deceased, and he is now such administrator, and as such is the owner and holder of the bond and mortgage above described. V. That the plaintiff is informed and believes, that on or about the 6th day of January, in the year of our Lord 1892, the defendant, Edward F. Mulloy, conveyed in fee all of his undivided right, title and interest in and to the above described premises to his codefendant, Thomas P. Craig, in consideration, among other things, that he would assume, pay off and discharge the aforesaid mortgage indebtedness, but with the agreement the plaintiff had nothing to do, and was not a party thereto. VI. That on or about the 29th day of August, in the year of our Lord 1894, the said defendant, Thomas P. Craig, executed and delivered his deed, with general warranty, conveying in fee simple, absolute, the above described premises to his codefendant, William D. Craig, and deposited the said deed with G. J. Redfearn, Esq., to be held by him as an escrow until the

payment of the consideration money hereinafter named. VII. That the said deed contained an express stipulation that the said Thomas P. Craig conveyed, 'subject to a mortgage held by E. N. Redfearn, administrator *de bonis non* of Thomas F. Mulloy, September 8th, 1884, the said W. D. Craig having assumed the payment of the said mortgage debt to E. N. Redfearn, administrator *de bonis non,* also the payment of certain debt of myself to Miss Lizzie Geddes, which sum of money constituted the consideration named in this conveyance, and he having agreed to relieve me from all liability from said debts.' With their agreement plaintiff had nothing to do, except he agreed to receive the payment if made. VIII. That about the date of said deed, or shortly thereafter, in pursuance of the agreement made by the defendant, William D. Craig, with Thomas P. Craig, to purchase of him the said premises, and pay therefor the consideration named in the said deed, this plaintiff is informed and believes that he entered into and took sole and exclusive possession of said premises, and has since that time taken unto himself whatever rents and profits that have accrued from said premises. IX. That the plaintiff is informed and believes that the said defendant, William D. Craig, has performed that part of that agreement with his codefendant, Thomas P. Craig, wherein he agreed to pay a certain debt of the said Thomas P. Craig to Miss Lizzie Geddes, and that part of the consideration named in the deed has been paid. X. That the said defendant, William D. Craig, in pursuance of his agreement with his codefendant, Thomas P. Craig, on the 15th day of January, A. D., 1895, paid to this plaintiff on the said mortgage debt the sum of $93.82, but has made no other payment. XI. That the defendants, William A. Carrigan and F. A. Silcox, doing business as Carrigan & Silcox; G. F. Moore, Isaac Bear and Samuel Bear, jr., doing business as Moore, Bear & Bro.; Wm. B. Young, Charles A. Young and Ernest Young, doing business as W. B. Young & Bro., and Joseph Louchlien and S. Eliel, doing business as Joseph Louchlien & Co., are judgment creditors of the de-

fendant, Edward F. Mulloy, of date prior to the 6th day of January, 1892, at which time he conveyed his interest in the mortgaged premises to his codefendant, Thomas P. Craig. XII. That said mortgage deed has become absolute, and there was remaining due and unpaid upon said mortgage ·debt, on the 31st day of December, 1895, the sum of $731.21, and in addition thereto there is due the interest that has accrued on the principal sum, $550, since that date." The prayer of the complainant was for a foreclosure and sale of the premises, and application of the proceeds to the mortgaged debts, and for a judgment for the balance against the defendants, Thomas P. Craig, Edward F. Mulloy and Wm. D. Craig, for any balance, and for general relief. The complaint was duly verified by the plaintiff.

The caption being omitted, the defendant, W. D. Craig, answered as follows: "First. That he is informed and believes that Wm. A. Mulloy, while administrator of Thomas P. Mulloy, loaned the funds set out in the complaint herein, and took the bond and mortgage of T. P. Craig and E. F. Mulloy to secure the payment of the same, styling himself administrator, but he is not advised whether said bond and mortgage constitute an asset of T. F.·Mulloy's estate, which passed to plaintiff by reason of his letters of administration *de bonis non,* and on the contrary he is informed and believes that the same property belongs to the estate of William A. Mulloy, and that plaintiff has no title to the same, and the administrator of William A. Mulloy is the proper party to sue on the same, and he is not before the Court. Second. For a second defense: I. He alleges that T. P. Craig, when he placed the escrow with G. J. Redfearn, took a written agreement from said Redfearn, stipulating that said deed was to be delivered to this defendant on condition that he pay the debts aforesaid, on or before January 1st, 1896, and if he did not pay by time the deed was to be returned to T. P. Craig, and defendant did not pay said debt; and if plaintiff consented to receive payment from him, it was a transaction between plaintiff and T. P. Craig. II. That he denies that he

has ever been in the sole and exclusive possession of said premises, but alleges that T. P. Craig, by his tenants or himself, has had possession of part of the same, and has allowed improvements of considerable value to be removed therefrom. Third. For a third defense: This defendant has signed no writing or memorandum of agreement whereby he ever agreed to pay to plaintiff or to T. P. Craig any amount of money for said land. Fourth. For a fourth defense: This defendant denies on information and belief that T. P. Craig could give good and indefeasable title to said property if defendant was ready and willing to purchase the same." Prayed that complaint be dismissed. Verified.

The defendant, Thomas P. Craig, answered the complaint as follows: He admitted the first, second, third, fourth, fifth, sixth, seventh, eighth and ninth paragraphs of the complaint, and he adopted them as part of his answer. He admitted the allegations in the tenth, eleventh and twelfth paragraphs of the complaint on information and belief, and adopted the same as part of his answer. The third paragraph of his answer was as follows: "III. That on or about the 29th day of August, 1894, this defendant bargained and sold the premises described in the complaint to his codefendant, William D. Craig, and in pursuance of said agreement for a bargain and sale of said premises, he executed his deed to the said William D. Craig for said premises by having the same prepared, signed, sealed and delivered to G. J. Redfearn, Esq., to be by him held in escrow until the payment of the purchase money." The fourth was as follows: "IV. That his said codefendant, William D. Craig, agreed to pay for said premises the amount of the mortgaged debt described in said complaint, and a certain debt due by this defendant to Miss Lizzie Geddes, the amount of which defendant cannot now remember." The fifth paragraph of his answer was as follows: "V. That not long after the date of the aforesaid agreement (the 29th of August, 1894), his codefendant, William D. Craig, in pursuance thereof, entered into possession of said premises, and has had the use, occupancy and

enjoyment of the storehouse and other fixtures that were thereon." The prayer of the answer of Thos. P. Craig was that his codefendant, William D. Craig, be required to specifically perform his agreement, and for general relief. The answer was duly verified and service thereof accepted on the 28th day of August by the plaintiff's attorney, and on the 14th day of September, 1895, a copy thereof was duly served on the defendant, William D. Craig, by the sheriff.

The defendant, E. F. Mulloy, answering the complaint, admitted all the allegations thereof in the first and second paragraphs of his answer and adopted the same. He prayed that the defendant, William A. Mulloy, be adjudged to perform his agreement.

On the 18th day of September, 1896, Judge Aldrich granted an order for the sale of the mortgaged premises, and referred all other issues raised by the complaint and several answers of the defendants to Edward McIver, Esq., to hear and report thereon. The said lands were sold and proceeds of sale applied to payment of costs, and the balance was applied to the partial payment of the bond and mortgage held by plaintiff.

The result of the report of the special referee, Mr. McIver, was: *First.* That title to the bond and mortgage sued upon in this action was not in the plaintiff, Redfearn, but was in the administrator of William A. Mulloy, deceased, who was not a party to this action. *Second.* That there was no privity between the plaintiff, Redfearn, and the defendant, William D. Craig, in the contract of T. P. Craig with W. D. Craig. *Third.* The defendant, T. P. Craig, and E. F. Mulloy, or either of them, could not force the defendant, W. D. Craig, to carry out his contract to purchase the lot in question, because there was no marketable title in Thomas P. Craig. He therefore recommended that the complaint be dismissed. Upon exceptions thereto, the report, the testimony and the pleadings were before his Honor, Judge Ernest Gary, who held that the referee was in error as to his first conclusion, but was correct in the other two conclusions, but

he refused to dismiss the complaint, still deciding that the plaintiff had no cause of action against the defendant, W. D. Craig, other than to foreclose the mortgage, and further decreeing that the defendants, Craig and Mulloy, could not enforce their supposed equities against the defendants. William D. Craig.

From this decree of Judge Gary the plaintiff and the defendant, Thos. P. Craig, appealed. We do not consider it necessary for us to embody the several sets of exceptions in this opinion—however, the reporter may embody them in his report.

Should the complaint have been dismissed? Unhesitatingly, we answer it should not, for there is no appeal from Judge Aldrich's decretal order, under which the foreclosure of the mortgage was actually made, and a sale of the premises affected. Besides, under the complaint, whether we hereafter find that there was error in regard to the judgment of Judge Gary as to the defendant, William D. Craig, or not, the plaintiff was clearly entitled to a judgment for the balance still due on his bond and mortgage against the defendant, Thomas P. Craig, and Edward F. Mulloy.

Was the Circuit Judge in error in holding that, under the law and in equity, Elijah N. Redfearn, as the administrator *de bonis non cum testamento annexo* of the estate of Thomas F. Mulloy, deceased, was the owner of the bond and mortgage executed by the defendants, Craig and Mulloy, to William A. Mulloy, as administrator with the will annexed of the estate of Thomas F. Mulloy, deceased? Before we look at the effect of the authorities in this State bearing upon this question, we would remark that the estate of a deceased man is an entity and a unity. No matter in whose hands his personal property may happen to be, nor where his lands may be located, such personal property and such lands enter in to make the single entity of the dead man's estate. Inasmuch as no lands are in question as belonging to the estate of Thomas F. Mulloy, deceased, we may

consider "lands" as not entering into this discussion.   What
is the tenure of an administrator or an executor of the per-
sonal property of a deceased person?   Either holds the per-
sonal property of his intestate or testator with a title in him-
self thereto, but as a trustee first for the payment of debts,
and then for the persons named in the statutes of this State.
There is not nor can there be in this State any absolute own-
ership of the property of a deceased person by his administra-
tor or executor.   Any fiction of the common law looking in
such a direction finds no countenance in our law.   Unless the
will of the deceased directs otherwise, no administrator or
executor can sell the personal property of the deceased only
upon an order granted by the Court fixing the time and terms
of such sale.   Now, after the twelve months from the death
of the intestate, creditors or distributees can sue the personal
representative for the recovery of debts or distributive shares,
respectively.   In such suits for debts or distributive shares,
respectively, a recovery can only be had from the monies of
the estate in the hands of the personal representative, or what
ought to have been on hand.   Suppose, however, there is no
suit brought by a creditor or a distributee, the personal rep-
resentative will be responsible for interest on whatever bal-
ance is in his hands, except in the event the funds of necessity
must be kept unproductive.   These funds may consist of
monies left on hand when the intestate or testate died, or of
monies raised by the sale of personal property, or of monies
collected by the personal representative, which the personal
representative must keep out at interest.   Let us suppose he
lends a part and has the other on deposit in bank to his credit.
"A. B., administrator with will annexed of the estate
of C. D.," then such administrator, dies, and at once
there is administration had upon the estate of A. B., as
an individual and also administration *de bonis non* upon
the estate of "C. D.," who will hold the monies on
hand in bank to the credit of "A. B., administrator of
C. D.," and also who will hold the securities taken by
"A. B., as administrator of C. D."   If the administrator

of the individual estate of A. B., who has died before he completed his administration of the estate of C. D., attempts to hold these respectively, by what *title* would he hold? In the event the personal representative of the deceased administrator turned these assets over to the administrator *de bonis non* of C. D., could a creditor of the intestate complain or a distributee? Could a debtor complain? We think a very suggestive answer would be furnished to the questions propounded by us by this case. When an administrator dies before he has completed administration, and with funds of his intestate on hand at his death, which pass into the hands of the person who qualifies as his administrator, a creditor of the first intestate's estate sues the administrator of the administrator to establish and collect his debt, which is barred by the statute of limitations, or which has been paid, what will this administrator do? Can he waive the statute of limitations? *Bolt* v. *Dawkins,* 16 S. C., 211, holds that an heir at law or distributee cannot arrest the bar of the statute; that an administrator alone can do so, and the law says an administrator of an administrator has no connection with the estate of the first intestate. This intruder upon the estate of the first intestate having waived the bar of the statute of limitations, pays upon a judgment against him the money in his hands as administrator of the first administrator. Such an act on his part is null and void. Why? Because he had no connection in law with the estate of the first intestate, whose estate he has intermeddled with. If these things be so, why should the administrator of *a deceased administrator* be permitted in law or in equity to hold anything earmarked by his intestate as belonging to the estate of the first intestate? Great stress in the case at bar is laid upon the fact that William A. Mulloy styles himself "administrator *cum testamento annexo*" in the bond, mortgage and his return. But the fact is overlooked that the plaintiff sues *as administrator de bonis non cum testamento annexo* of Thomas F. Mulloy, deceased, and in the allegations of his complaint he avers that William A. Mulloy received these assets and made the invest-

ment thereof as administrator of his intestate, Thomas Mulloy, deceased. His testimony showed that it was the money he (W. A. Mulloy) held as such administrator, which he lent to Craig and Mulloy. It is always perfectly competent to explain what character the payee had, whether as an individual, trustee, guardian, administrator, executor. The case from Greenville, where inadvertently the name of the payee was omitted in a sealed note, is a good illustration of this doctrine of supplying the representative character to the payee, for in the case cited, the plaintiff was allowed to prove the name of the omitted payee. *Barkley* v. *Terrant,* 20 S. C., 578. We do not see, therefore, that there was anything of moment, in view of the circumstances surrounding the execution of this bond and mortgage to William A. Mulloy, administrator, &c., instead of *as* administrator, &c., in the matter of the omission of the word "as" in such bond and mortgage. But it is contended that the authorities in this State support the view that it is only unadministered assets of an intestate that pass to his administrator *de bonis non,* on the death of the first administrator. As long as *Smith* v. *Carrere,* 1 Rich. Eq., 123, was allowed to remain as authority in this State, there was something in defendant, W. D. Craig's, contention; but when Chancellor Job Johnston, by his clear reasoning, with the authorities supporting his position, in *Villard* v. *Robert,* 1 Strob. Eq., 393, furnished a review of Chancellor Harper's decree in *Smith* v. *Carrere, supra,* there was nothing left in it but its name, its authority was blasted forever. Such overruled case was decided in 1845, and overruled in January, 1847. The later case of *Rhame* v. *Lewis,* 13 Rich. Eq., 269, went further, if anything, than did *Villard* v. *Robert, supra.* In Rhame's case, Chancellor Inglis, as the organ of the Court, showed that some of the errors of the past in this branch of the law in this State arose from a contracted view of the word "administrator," and to quote his language where, discussing this subject, he says: "And then, if these securities (sale or notes) are his own absolute property and not in the judgment of

35—57

equity substantially the assets of the entire estate, or if it be preferred so to call them new investments of the trust funds, with their fiduciary character openly impressed upon their face or otherwise disclosed, and so assets by substitution the equities which the creditor and distributees had for the protection of their interests against a fraudulent diversion of the trust property from its legitimate purposes by the administrator and his confederates, are finally gone." We had better state just here that Lewis, as administrator of one White's estate, had sold a large amount of the personal property belonging to his intestate's estate, and the sale being on a credit, such administrator had notes, with sureties thereto, representing the proceeds of such sale. Wishing to obtain the loan of money, Lewis induced one Pollard to become his surety on a note for about $12,000, delivering to said Pollard the bonds of two gentlemen, named Dick, for over $12,000, which had been taken by him as administrator of White, deceased, to collect and pay to himself the amount of his suretyship. This Pollard did; he had to pay some $12,000 on his note as surety for Lewis, and he applied about $12,000 of the Dick notes to reimburse him for his payments. It should be mentioned that these bonds so turned over to Pollard were made payable to "Lewis, administrator of White, deceased." When Lewis failed to pay the distributees what he owned them, Rhame, who was a surety on his bond as such administrator, paid such distributees, and became subrogated to their rights against Lewis, as administrator, and he, therefore, brought his action against Lewis and Pollard to recover these bonds of the Messrs. Dick. The Court held him entitled to the relief he sought. Chancellor Inglis, in addition to what has already been quoted, amongst other things, said, at page 316: "* * * If these equities are not transferred to and do not attach upon the securities into which they (the assets of the estate) have been converted, then are the distributees and creditors in a worse condition than before the sale; and if that has been, in fact, unnecessary and really wrong, as is undoubtedly sometimes the case, the one wrong

when successfully accomplished is made to justify all that follows in its track.   No defense whatever remains to them against the consequences of any subsequent misapplication of the proceeds of such sale except the personal responsibility of the administrator and his bond.   The next day, after completing the sale of his intestate's whole assets, he may distribute the securities therefor among his own creditors, or make a voluntary assignment of them with the rest of his property for their benefit.   Upon his death, they go in to the mass of his personalty and as a part thereof into the hands of his individual representative, and in the event of his estate proving insufficient to satisfy all his debts and liabilities, the creditors and distributees of his intestate have no other claim upon them than for a *pro rata* share in common with his private creditors  * * *  How can any or all of these results possibly be prevented, except on the ground that these securities are not the absolute property of the administrator, but are held by him in trust for the purposes of his administration; and that the equity of all interested in the accomplishment of these purposes to have them applied thereto as against himself and all claiming under him, except such as have taken them for value and in good faith, attaches upon them and will be enforced by this Court?   These securities can occupy no middle ground, they can be of no mongrel character.   They are either the one thing or the other; either the legal title and the beneficial interest unite in the administrator, or else he holds the legal title in trust for the benefit of others  * * *  If the latter, then they are in his hands in the regard of equity exactly as the original assets were subject to the same restrictions upon the power of alienation and the same equity.   But what *is administration?*   Does the mere conversion of the specific assets into money even consummate it?  * * *  But is not the application of the proceeds according to law in payment of debts and in distribution also essential to its completion  * * *  If an administrator convert the whole of his intestate's assets into money by collection and sale, and die leaving the money so received distinguished and

separated from his own in a packet, indorsed so as to indicate that it is the proceeds of such conversion, would not the parcel of money so marked and identified be assets of the original intestate to pass into the hands of him who shall be deputed to administer the yet *unadministered* estate? And would not equity enforce the right of such administrator *de bonis non* to the specific possession? Or, if without having so distinguished it, he dies with the entire proceeds or any part thereof in his hands, having made no distribution and leaving debts of his intestate unsatisfied, is not an administrator *de bonis non* entitled in equity to claim and have such proceeds from the personal representative of his predecessor in the administration as assets of his own intestate to be by such administrator *administered?* * * * If, then, an administrator, under an order such as our law now requires, sells the estate of his intestate on a credit, taking bonds or notes, with sureties as directed, payable to him as administrator, and so distinguished from such as are his own, and die while the period of credit is unexpired, will not the administrator *de bonis non* of the original intestate be entitled in equity to a specific delivery of such securities (subject, of course, to a right to retain for any balance of advance or charges) to be by himself collected and applied in a due course of administration, and to a transfer, if need be, of the legal title by the personal representative of the deceased administrator? * * * If so, does he not receive them as assets of his intestate yet unadministered; and how can they be such if they were not so in the hands of the first administrator?" The reasoning of Chancellor Inglis has so impressed the judicial department of this State, that the authority of Rhame *v.* Lewis has never since been questioned. While it is directed to the recovery by the distributees of White, deceased, of certain bonds given for the value of property sold by Lewis, as administrator of White, yet it cannot be seen where any difference exists in principle between the case at bar and Lewis' case; the bond in each case was given for assets belonging to the estate of the intestate, respectively—in one instance,

for negroes sold, in the other, for money loaned.  We agree with the Circuit Judge that E. N. Redfearn, as administrator, &c., of Thomas F. Mulloy, deceased, was the proper owner and holder of the bond and mortgage sued on.

We will now, in the first place, see if there was any privity between E. N. Redfearn, as administrator, &c., on the one side, and Wm. D. Craig (the defendant), on the other side. It is true, no contract was entered into by these parties, but it seems to us that when William D. Craig agreed to pay the debt of his grantee, Thomas P. Craig, to said Redfearn, as administrator, and the said Redfearn, as administrator, agreed to receive payment of the debt contracted by Mulloy and Craig from the defendant, William D. Craig, and actually did receive a part of such said debt from said William D. Craig, that there was established a relation very close to that of debtor and creditor.  But whether we hold that this relation is established in this form of equity and good conscience, certainly, in the second place, there can be no doubt that the relation of debtor and creditor subsisted between Thomas P. Craig and William D. Craig, and that thereby there was created an equity in said Thomas P. Craig, which was enforceable as against William D. Craig, and by which it was in the power of said Thomas P. Craig, in the Court of Equity, to compel the said William D. Craig to pay the balance due on bond and mortgage held by the plaintiff to said plaintiff.  William D. Craig insists that Thomas P. Craig never turned over the entire premises to him, because there was a room in upstairs part of the storehouse building wherein some Masonic regalia, etc., were left stored; but this was with the consent of said Wm. D. Craig.  So, too, W. D. Craig claims that some outbuildings were removed; but the "Case" shows that this matter had been adjusted between said Thomas P. Craig and William D. Craig.  But William D. Craig claims that because the defendant, Thomas P. Craig, had deposited his deed of conveyance for the storehouse and-lot in the hands of G. J. Redfearn as escrow, with written directions by which G. J. Redfearn would deliver the

said deed unto William D. Craig as the grantee named therein, in the event he, the said William D. Craig, should pay the mortgaged debt to plaintiff, Redfearn, as administrator, and also should pay unto Miss Geddes a debt owed to her by the said Thomas P. Craig, on or before the first day of January, 1896, or in the event the said William D. Craig failed to pay both debts by said 1st January, 1896, that in such an event the said G. J. Redfearn should deliver said deed to said Thomas P. Craig; and because said Thomas P. Craig never changed said escrow, that he was thereby released from his agreement to pay the plaintiff his said bond and mortgage. Is this so? When William D. Craig paid Thomas P. Craig's debt to Miss Geddes, and also paid to the plaintiff $93.82, in part payment of plaintiff's bond and mortgage, and Thomas P. Craig consented thereto, we are not so sure that the said Thomas P. Craig could disregard William D. Craig's rights in the said lot of land. Certain it is that William D. Craig, by entering into the full possession of the storehouse and lot as the owner thereof and by making the payments referred to, has put it out of his power now to claim any advantages to himself from the escrow. There has been no evidence submitted in the "Case" which shows that any judgment against Edward F. Mulloy would interfere with the purchase of this lot by William D. Craig. Although such judgment creditors are made parties to this action, not one of them has by answer or otherwise asserted any claim against this land. Having been invited to speak, and having declined to do so, they can never be heard to complain if William D. Craig shall be required to comply with his contract with the said Thomas P. Craig, by which he must pay the balance due to the plaintiff, as administrator as aforesaid, on the bond and mortgage sued upon. It follows, therefore, that the judgment of the Circuit Court must be modified.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed in all particulars, except that the defendant, William D. Craig, must be adjudged to pay the

balance due on the bond and mortgage set up by the plaintiff; but in the event the said William D. Craig should prove unable to pay said bond and mortgage, then said plaintiff shall have judgment against the defendants, Edward F. Mulloy and Thomas P. Craig, for the balance due on said bond and mortgage.

Mr. Chief Justice McIver *concurring.* My concurrence is limited to the result because, according to my view, the question as to the legal ownership of the bond and mortgage does not properly arise in this case because the defendants are precluded from raising any such question by their acquiescence in the orders of Judge Aldrich, which necessarily proceeds upon the assumption that the plaintiff is the legal owner and holder of the bond and mortgage.