H. C. Hoeldtke et al. v. F. W. Horstman et al.

Decided March 31, May 13, 1910.

**1.—Vendor and Purchaser—Assuming Incumbrances—Acceptance of Contract—Rescission.**

A vendee assuming the payment of an outstanding incumbrance upon the land becomes personally liable thereon; a subsequent rescission of the trade and reconveyance of the land by agreement between vendor and vendee, after the latter's undertaking has been accepted by the holder of the incumbrance, will not release him from such personal liability, though he acted without notice that the incumbrancer had accepted his contract to assume the payment. Such contract was irrevocable without the mortgagor's consent. (Willson, Ch. J., dissenting.)

**2.—Contract—Rescission—Release of Liability.**

A contract between the vendor and vendee whereby the land was reconveyed to the former considered and held not to constitute by its terms a release of the latter from his obligation to the holder of an outstanding incumbrance which, by his original contract, he had assumed to pay.

ON MOTION FOR REHEARING.

**3.—Fraud—Injury—Cancellation of Contract.**

Equity will not cancel a contract or relieve against its enforcement because of fraudulent representations inducing it, unless the complaining party will otherwise be prejudiced.

**4.—Same—Case Stated.**

Though a vendee of land was induced to make the purchase by fraudulent representations that an outstanding incumbrance had been discharged, no injury demanding rescission of the contract for his protection appeared when he did not assume personal liability for its payment and its lien against the land had been released by the holder.

Error from the District Court of Fannin County. Tried below before Hon. Ben. H. Denton.

*J. W. Gross,* for plaintiff in error, Hoeldtke.

*G. W. Wells,* for plaintiff in error, Leach.

*McGrady & McMahon,* for defendant in error, Hill.

HODGES, Associate Justice.—This is the second appeal in this litigation; the former is reported in 117 S. W., 217. The suit was originally instituted by Hoeldtke, one of the plaintiffs in error, against B. S. McCleary and L. C. Hill, seeking a recovery on a promissory note and the foreclosure of a vendor's lien against a tract of 57 acres of land, for which the note was a part of the purchase price. Leach, the other plaintiff in error, was made a party defendant upon the ground that he held a note for $175 which was also a lien against the same tract of land. In the course of this opinion Hoeldtke and Leach will be referred to as plaintiffs, and Hill and McCleary as defendants.

The facts show that some time prior to 1905 the land in controversy was sold to B. S. McCleary, one of the defendants, by Horstman.

The consideration for the conveyance consisted in part of two notes, one for $175, the one now held by Leach, and another for $140 afterwards held by J. E. McCleary, a brother of the vendee. McCleary was also to assume a note for $690 held by plaintiff Hoeldtke, the one sued on in this action. All of these notes recited the reservation of the usual vendor's lien against the land. In October, 1906, B. S. McCleary, grantee in the above conveyance, sold and conveyed the same land to the defendant, Hill. The consideration for this transfer was in part some personal property conveyed by Hill to McCleary, and the assumption by Hill of the payment of the note for $175 now held by Leach, and the one for $690 owned by Hoeldtke. A vendor's lien in favor of McCleary to secure the payment of these notes was retained in the deed. In addition to McCleary's interest in this land, Hill also got in this deal, McCleary's personal notes for about $500 secured by a chattel mortgage, and two other notes held by the latter for something over $200. McCleary being unable to meet his indebtedness to Hill, on July 11, 1907, they made another contract evidenced by the following written instrument: "Honey Grove, Texas, July 11, 1907. The following agreement is this day made between L. C. Hill and L. T. McCleary as follows, effective this day. L. C. Hill agrees to surrender two notes against said McCleary amounting with interest to $512; also assumes rents now due and to give McCleary an equity of $307 in land deeded him by McCleary last fall, at which time $615 equity was traded to Hill and in return McCleary surrenders to Hill the confectionery business fixtures, stock and all effects in the business known as the L. T. McCleary confectionery, except his accounts. L. T. McCleary does not assume any obligations other than above stated, except taxes for 1907; each party agrees to pay taxes on property acquired by this exchange, McCleary to have rents from the land for the year 1907." Hill also executed a deed reconveying the land to McCleary, in which was the following recitation: "Know all men that I, L. C. Hill of Fannin County, Texas, in consideration of $1500 paid by B. S. McCleary as follows: $307.50 cash in hand paid, the receipt of which is acknowledged, and the further consideration of B. S. McCleary assuming the payment of four certain vendor lien notes, two of said notes for the sum of $175," etc. The deed then recites a consideration just as that in the former deed from McCleary to Hill. All of the above described notes except the L. C. Hill $307.50 note, bearing eight percent interest per annum, interest payable annually as it accrues, with ten percent attorney's fees if placed in the hands of an attorney for collection. It is expressly agreed and stipulated that a vendor's lien is retained against the property, premises and improvements, until the notes and all interest thereon are fully paid. There is some dispute about the delivery of this deed and its acceptance by McCleary. The jury, however, found that it had been delivered.

The case was submitted to a jury upon special issues, and in response to the questions propounded they found the following facts: That Hoeldtke and Leach accepted the promise of Hill to pay the notes held by them, as shown by McCleary's deed to Hill of October 16, 1906, that Hill did not know of this acceptance prior to July 11,

1907, the date when Hill and McCleary entered into the second contract above mentioned; that McCleary received and accepted from Hill the deed of July 13, 1907, reconveying the land to McCleary; that in making the first contract, McCleary had represented to Hill that the note for $140, payable to Horstman and referred to in the deed from Horstman to McCleary, had been paid, that Hill knew nothing to the contrary, and relied upon those representations. Upon these findings the court rendered a personal judgment in favor of Hoeldtke and Leach against B. S. McCleary, and for the amount of their notes, and ordered a foreclosure of their liens against the land; but discharged Hill from any personal liability for any of the obligations formerly assumed by him in the trade with McCleary. From the judgment in favor of Hill, this writ of error is prosecuted by both Hoeldtke and Leach.

The first assignment of error complains of the refusal of the court to enter a personal judgment against Hill in favor of the plaintiffs, upon the answers returned by the jury. Inasmuch as we think the case should be disposed of upon this assignment, it will be necessary for us to refer to the pleadings of Hill and review at some length the facts upon which his defense rests. Hill claims exemption from personal liability on the two notes sued on, upon two grounds: (1) That he was ignorant of the acceptance by the plaintiffs of his promised assumption of these notes till after he had reconveyed the land to McCleary on July 13, 1907, in accordance with an agreement made two days before that time, and had obtained a release by McCleary's reassumption of these debts; (2) that if he was not relieved of personal liability by that transaction, he was entitled to a rescission of the original contract on account of a fraud perpetrated by McCleary in representing to him that the note for $140, in which a vendor's lien was reserved against the land, had been paid, when in truth and in fact it had not, but was still an outstanding encumbrance on the property purchased by him. The foregoing, though less specific than the pleadings, contains the substance of Hill's special defenses. Considering these in their order, the first inquiry will be as to the status occupied by Hill when he assumed the payment of the notes held by the plaintiffs, when he accepted the conveyance from McCleary. That he thereby became primarily liable as an original promisor, had his status remained unchanged by any reassumption of the payment of the same debts by McCleary, in the second contract, is a proposition about which there is practically no dispute, and one which is abundantly sustained by authorities. Huffman v. Western Mortgage Co., 13 Texas Civ. App., 169, 36 S. W., 306; Keller v. Ashford, 133 U. S., 610; Union, etc., Co. v. Handford, 143 U. S., 187; Johns v. Wilson, 180 U. S., 440; 1 Jones on Mortgages, secs. 763-764; 2 Warvelle on Vendors, sec. 644 et seq. See also this case on former appeal, 117 S. W., 217. But the fact that McCleary in the deed to him from Hill, of date July 13, 1907, did reassume the payment of the same debts, is relied upon as exonerating Hill from his personal liability. While there is some question as to the sufficiency of the evidence to sustain the finding of the jury that McCleary accepted this deed from Hill, and that there was such a delivery as completed the transfer of title,

for the purposes of this discussion we will treat the finding of the jury as having settled that issue in favor of a delivery. The question then is, did McCleary and Hill have the right, without the concurrence of Hoeldtke and Leach, to release Hill from this obligation, or to enter into a new contract between themselves alone which would legally have that effect? In other words, does the contract of the grantee of mortgaged property, who assumes as a part of the consideration of his purchase a prior debt due from his grantor, after the mortgagee has assented to, or accepted the new promise, become irrevocable without the consent of the mortgagee? The following authorities, we think, support the affirmative of that proposition: Starbird v. Cranston, 24 Colo., 20, 48 Pac. 652; Haas v. Dudley, 30 Ore. 355, 48 Pac. 168; Gifford v. Corrigan, 117 N. Y., 257, 6 L. R. A., 610; 15 Am. St., 524; First Nat'l Bank v. Chalmers, 144 N. Y., 432, 39 N. E., 331; Iowa Loan & T. Co. v. Schnose, 19 S. D., 248, 9 Am. & Eng. Cases Ann., 255; Boissac v. Downs, 16 La. Ann., 187; Stockton v. Gould, 149 Pa. St., 68, 24 Atl. 160; Willard v. Worsham, 76 Va., 392; Fields v. Thistle, 58 N. J. Eq. 339, 43 Atl., 1072; 27 Cyc. 1360, and cases cited; 3 Pomeroy Eq. Jur. secs. 1206-7. The courts are not in harmony as to the principle upon which this liability should be justified. Some of the earlier decisions are disposed to treat the assumption as a contract of indemnity made for the benefit of the mortgagor, of which the mortgagee may avail himself by right of subrogation, and that his remedy may be enforced only through an equitable proceeding. The majority of the later adjudications, and the text writers as well, regard such an undertaking as a contract made for the benefit of the mortgagee, upon which he may sue the grantee directly at law; that when assented to by the mortgagee the contract of assumption partakes somewhat of the nature of a novation. The rationale of the latter doctrine is thus stated by Mr. Pomeroy, in the last section above referred to: "The ground of the grantee's liability adopted by the courts of a large majority of the States is that of contract. It is an application of the general doctrine, so widely prevailing in this country that it may properly be called an American doctrine,—where A makes a promise directly to B, for the benefit of C, upon a consideration moving alone from B, C, being the party beneficially interested, may treat the promise as though made to himself, and may maintain an action at law upon it in his own name against A, the promisor. According to this generally accepted view, the liability of the grantee who thus assumes the payment of an outstanding mortgage, does not depend upon any extension of the equitable doctrine concerning subrogation; it is strictly legal, arising out of a contract binding at law; the mortgagee, instead of enforcing the liability by a suit in equity for a foreclosure, may maintain an action at law against the grantee upon his promise, and recover a personal judgment for the whole mortgage debt." The courts of New Jersey are conspicuous for adhering to, if not for having originated in this country, the doctrine of subrogation as the basis of the mortgagee's right to sue the subsequent purchaser under such conditions. In the case of Fields v. Thistle, cited above, the action was on a "bill for deficiency," in which it was sought to recover a personal judgment against one

who had assumed the payment of a prior mortgage debt, for the amount remaining unsatisfied after the sale of the mortgaged property. The mortgage had been foreclosed in another proceeding, and between that time and the institution of this action, an effort was made by the mortgagor to release his vendee. It was held that this could not then be done, the court saying: "Bringing an action to foreclose and claim therein for deficiency is such an adoption of the covenant by the mortgagee as terminates the right of release." In this connection the language used by the New York court in Gifford v. Corrigan becomes forceful and pertinent: "Is this release, thus executed, a defense to this action? . . . My judgment leads me to answer that question in the negative. Of course it is difficult, if not impossible, to reason about it without recurring to Lawrence v. Fox, 20 N. Y. 268, and ascertaining the principle upon which its doctrine is founded. That is a difficult task, especially for one whose doubts are only dissipated by its authority, and becomes more difficult when the number and variety of its alleged foundations are considered. But whichever of them may ultimately prevail, I am convinced that they all involve, as a logical consequence, the irrevocable character of the contract after the creditor has accepted and adopted it, and in some manner acted upon it. The prevailing opinion in that case rested the creditor's right upon the broad proposition that the promise was made for his benefit, and therefore he might sue upon it, although privy neither to the contract nor its consideration. That view of it necessarily involves an acquisition at some moment of time of the right of action which he is permitted to enforce. If it be possible to say that he does not acquire it at the moment when the promise for his benefit is made, it must be that he obtains it when it has come to his knowledge, and he has assented to and acted upon it; for he may sue. That is decided, and is conceded. If he may sue, he must at that moment have a vested right of action. If it was not obtained earlier, it must have vested in him at the moment when his action was commenced; so that the right and the remedy were born at the same instant. But there is no especial magic in a lawsuit. If it serves for the first time to originate the right which it seeks to enforce, it can only be because the act of bringing it shows unequivocally, that the promise of the grantee has come to the knowledge of the plaintiff; that the latter has accepted and adopted it; that he intends to enforce it for his own benefit, and gives notice of that intention to the adversary. From that moment he must be assumed to act or omit to act, in reliance upon it. But, if all these things occur before a suit commenced, why do they not equally vest the right of action in the assignee? What more does the mere lawsuit accomplish? And so the contract between grantor and grantee, if revocable earlier, ceases to be so when by his assent to it, and adoption of it, the creditor brings himself into privity with it, and elects to avail himself of it, and must be assumed to have governed his conduct accordingly. I see no escape from that conclusion." In a still later case, Bank v. Chalmers, supra, the same tribunal says: "Wherever the facts show that the debtor has transferred or delivered to the promisor, for his own use and benefit, money or property in consideration of the latter's agreement to assume and pay the outstanding debt,

and he thereupon has promised the creditor to pay, that promise is original, upon the ground that, by the acceptance of the fund or property under an agreement to assume and pay the debt, the promisor has made that debt his own, has become primarily liable for its discharge, and has assumed an independent duty of payment, irrespective of the liability of the principal debtor. Ackley v. Parmenter, 98 N. Y. 425, 50 Am. R., 693; White v. Rintoul, 108 N. Y., 223, 15 N. E., 318." In the case of Spann v. Cochran, 63 Texas, 240, the facts involved resulted from a transaction much like the one in the case here under consideration. One of the parties sought to be held liable as having assumed the preexisting mortgage debt had not signed any written obligation to that effect, and he relied upon the statute of frauds as a defense. The court said: "It thus appears that, at the time Cochran & Ewing acquired the interest of Watson in the co-partnership property, they obligated themselves to pay the debts or liabilities, and this, as the chief consideration on which the sale by Watson was based. It, however, does not appear that Spann was a party to that contract; nor that the instrument by which the obligation of Cochran & Ewing to pay the debt due to Spann, is claimed to have been fixed was signed by them. It is believed, however, that such an agreement between a debtor and a third person, made upon valuable consideration, gives to the creditor a cause of action on which he may sue and recover from the person who has so contracted to pay to him a debt originally due only by the person to whom the promise is made. This seems to be in accordance with the great weight of American authority." In addition to the foregoing, we refer to the following Texas cases: Mich. S. L. Asso. v. Atterbury, 16 Texas Civ. App., 222, 42 S. W., 569, writ of error refused; Baptist Book Concern v. Hendricks Estate, 46 S. W., 859; Gay v. Pomberton, 44 S. W., 400; Beital v. Dobbin, 44 S. W., 299; Ward v. Green, 28 S. W., 574; Schneider v. Roo, 25 S. W., 58. See also, 3 Paige on Contracts, sec. 1314, and authorities cited in notes. So far as our investigation has been extended, all of the cases where this question has been involved concede that the promise of the grantee becomes irrevocable when the mortgagee has in some manner acted upon it, with the exception of two, one in California and the other in New Jersey. Biddel v. Brizzolara, 64 Cal., 354; Laing's Exrs. v. Byrne, 34 N. J. Eq. 52. These, however, have become so isolated by the subsequent trend of American adjudications, that they may now be regarded as being without weight as judicial authority upon this question. Certainly it may be said that they are at present almost, if not entirely, alone in espousing the doctrine which distinguishes them from the great body of judicial opinions. In those cases where it is held, if the mortgagee has in some manner acted upon the promise of the grantee, that the liability of the latter becomes fixed, it is not claimed that this action must be such as would create an estoppel against the grantee. It seems to be sufficient if it is such as to evince an acceptance, or an adoption of the promise by the mortgagee. If this be the true view, then it follows, irresistibly, that the grantee can not thereafter relieve himself of his assumed obligation without the consent of the creditor whose assent fixed his status. This would seem to be in accord with the general

principles governing the rights of contracting parties. When Hill purchased this land from McCleary, he, in effect, held back that portion of the consideration which was due to Hoeldtke and Leach from the purchase price. This he undertook to pay to them, or to the holders of the notes, not to benefit McCleary, but in order to discharge an encumbrance against the property which he had purchased, and as a part of the consideration. We do not think it was essential in order to fix the liability of Hill that he should have received actual notice of the plaintiffs' assent to, or acceptance of his promise made for their benefit. When he accepted the deed from McCleary containing the recitation of his assumption of those outstanding obligations, it was an unconditional promise upon his part to pay those notes according to their terms. It was not a mere offer by him to make a contract, but an absolute contractual undertaking. In accepting his promise the holders of the notes added nothing to the burden of his obligation, nor would their refusal or failure to accept have relieved him of any burden. Hill was bound to know that his promise, if of any value, might and probably would be assented to and relied upon by those creditors as an additional security.

But it was not necessary to call in the aid of the principle discussed unless it appears from the contract between McCleary and Hill, that the latter was to be released from his assumption of the notes sued on. We do not think it clear, by any means, that the contract is susceptible of that construction. In their negotiations, in the contract itself, and in the testimony relating to it, the interest of McCleary in the land is referred to as an "equity" of the estimated value of $615, and it is this equity which was conveyed to Hill. In the contract for the reconveyance from Hill to McCleary in July, 1907, made at the time he claims to have been released, Hill "agrees to surrender two of the notes against McCleary, amounting, with interest, to $512; also assumes rent now due (on house occupied by McCleary), and to give McCleary an equity of $307 in the land deeded him by McCleary last fall, at which time a $650 equity was traded to Hill." etc. The language of the deed which followed this contract is consistent with the foregoing expressions, and shows that Hill was to get from McCleary a note for $307.50, representing the difference between the value of the equity which he (Hill) had purchased, and that which McCleary was to get back, as a part of the consideration for the second exchange of property. The deed from Hill also retains a vendor's lien in his favor to secure the payment of the notes mentioned, all of which McCleary thereby agreed to pay, and among which are the notes here sued on. The contract and deed do not support the contention that they compose a transaction amounting to a mere rescission of the first contract, and in legal effect operate as a release of Hill from his assumed obligation. The last conveyance puts Hill in the attitude of a vendor selling the property back to McCleary, not merely returning it as a cancellation of a former contract. He also seeks to protect himself by the reservation of a lien, not only against default in the payment of the portion of the consideration which he was to get, but that also which he had formerly assumed to pay to Hoeldtke and Leach. He binds himself by a clause of general warranty. These provisions

are wholly inconsistent with any apparent purpose of rescission, and show no attempt to release Hill from his assumed obligations. We think if Hill is to be relieved from present personal liability, his release must rest upon the fact that McCleary himself reassumed the debt. But if we are correct in concluding that Hill's promise was not revocable after the assent and acceptance of his creditors, McCleary's reassumption of those debts was no more effective in releasing him, than would the promise of any other party who had agreed to assume those debts as a part of the purchase price of the land. We have reached the conclusion that Hill was not released from his assumed obligations by the second contract of conveyance between him and McCleary.

The next question is, was Hill entitled to immunity on account of any fraud perpetrated by McCleary in representing to him that the note for $140 outstanding as a lien against the land had been paid? This note was offered in evidence on the trial by the defendant Hill, and shows upon its face that it was not due till December, 1907,— more than a year after his purchase from McCleary. To give full effect to the findings of the jury we must accept as proved the following facts. That McCleary represented to Hill that this note had been satisfied; that Hill knew nothing to the contrary till after the institution of this suit, and relied upon those representations in making his purchase of the land. The jury also returned a single negative answer to the following: "Did McCleary take up the $140 note according to his promise to Hill, if he made any such promise, and did said McCleary cause to be executed a release of said note according to his promise and agreement with Hill?" The materiality of the misrepresentations, and the question of fraud on the part of McCleary in making them, were not submitted to the jury. If the state of the evidence was such as to justify it, we would be compelled to assume that the court himself determined those issues in a manner to support the judgment rendered. The burden of proof is upon the party seeking to rescind a contract, or relieve himself of some contractual liability, on account of the fraud of another, to clearly prove the fraud relied upon or the circumstances from it should be presumed. 2 Warvelle on Vendors, sec. 843. The testimony relative to this note for $140 shows that J. E. McCleary, a brother of the defendant B. S. McCleary, residing in the state of Oklahoma, owned it at the time of the conveyance to Hill, in October, 1906; that he purchased it in 1901 or 1902 and turned it over to the defendant, B. S. McCleary, or sent it to him by mail, about 1906, when the latter was on the trade with Hill; that J. E. McCleary never placed the note with any one for collection. J. E. McCleary also stated that he sent the note to his brother, B. S. McCleary, in response to a request, but did not know whether the trade had been made with Hill at that time or not. He took up the note to help his brother, and did not expect to get his money out of the land. B. S. McCleary wrote to him to send the note, and he did so for the purpose of its being canceled. The defendant, B. S. McCleary, testified that he did not tell Hill that the note had been paid off at the time they made their trade, but that it was outstanding and he would take it up; that his brother, J. E. McCleary, owned the note; that in a few days after making the trade with Hill he wrote to his

brother and got the note within a short time; he then turned it over to another brother, Charley McCleary, to be put with his papers in the bank. Hill testified that about February 1, 1908, after this suit was filed, Charley McCleary told him about the note. He says: "He (Charley.McCleary) simply told me that Ernest (J. E. McCleary) had a note for $140 against this land, and that it would have to be adjusted by some one. He did not demand of me payment of the note." Hill further stated that no one claimed payment from him, and that while he owned the land nothing was said to him about it. There was other testimony tending to show that Charley McCleary had, or thought he had, the note for collection about February 1, 1908, and took some steps in that direction, but did nothing definite, and subsequently sent the note to his brother in Oklahoma. On February 14, 1908, the defendant, Hill, filed his amended original answer, in which he for the first time set up the alleged fraudulent representations of B. S. McCleary regarding payment of the note, and asked for a rescission of the original contract. Within a few days thereafter, and before trial, a written release was executed by J. E. McCleary, dated February 25, 1908, and which was on the trial offered in evidence.

The foregoing are the facts relied upon to show the fraud charged as the ground of Hill's release of personal liability on his contract assuming the Hoeldtke and Leach notes. In our opinion they are insufficient. At most, the note for $140, if it was not paid as represented by McCleary, could affect Hill only as an encumbrance upon the land while he owned it. According to Hill's contention, and the finding of the jury which he insists is supported by the evidence, his title to the land has passed back to McCleary, the man upon whom rested the duty of ·paying the note in the first instance; and in this suit, where the rights of the different lienholders are to be adjusted, no claim has been urged in behalf of any holder of that note. On the contrary, it is conclusively shown that it has been released, so that it can no longer be an encumbrance on the land. Redfearn v. Craig, 57 S. C., 534, 35 S. E., 1024. We think the court should have rendered judgment against Hill in favor of the plaintiffs upon the answers returned, and that for this refusal the judgment must be reversed.

This is the second appeal of this case, and there is nothing in the record to indicate the necessity for going through another trial in order to settle any issue of fact essential to a proper disposition of ·the case. Judgment will therefore be here rendered for the plaintiffs against Hill, personally, for the amount sued for.

*Reversed and rendered.*

WILLSON, CHIEF JUSTICE, Dissenting.—It was not claimed that as a result of the transactions between Hill and McCleary the latter had been released from liability to Hoeldtke, and that the former had become liable to him. The contention was that as a result of those transactions McCleary continued to be and Hill became liable to Hoeldtke. Under such circumstances, the effect of the last transaction between McCleary and Hill having been to release the latter from the obligation he had incurred to the former to pay his debt to Hoeldtke, I do not agree that Hill nevertheless was liable to Hoeldtke.

I do not think Hoeldtke's right to hold Hill liable can be referred to a contractual relation between them, or to any such relation between Hill and McCleary for Hoeldtke's benefit; but must be referred to the doctrine which permits a mortgagee to become subrogated to the mortgagor's right to enforce against his grantee the latter's undertaking to pay the former's debt to the mortgagee. So long as the grantee is liable on his undertaking to pay the grantor's debt to the mortgagee, he may be sued by the latter, because, and I think only because, he may be sued by his grantor. When he is no longer liable to a suit by his grantor., in the absence of other circumstances than appear in the record before this court, I think there is no personal liability on his part to the mortgagee. To treat the grantor here as bound by a contractual tie to the mortgagee, it seems to me, is to wholly ignore the absence of all the elements of a contract. There was no agreement between Hill and Hoeldtke whereby the former became liable to the latter. There was no consideration proceeding from the latter to support such an agreement between them, had there been one. Hill's agreement was with McCleary alone for a consideration proceeding from McCleary alone. McCleary's agreement with Hill was for his own (McCleary's) benefit, and not in any sense for Hoeldtke's benefit. He was liable to Hoeldtke on account of land Hoeldtke had a lien on, and having conveyed the land to Hill, he had the latter to agree to indemnify him against such liability. To say that McCleary's purpose in contracting with Hill was to benefit Hoeldtke, is to ignore the truth of the matter and to give force to an obvious unreality. McCleary's purpose plainly was to benefit himself. There was no reason, legal or otherwise, why he should make such a contract for Hoeldtke's benefit. He had already secured Hoeldtke in a way satisfactory to him, and was under no obligation to secure him further. The effect of the ruling made by the majority is to give to Hoeldtke, without any consideration whatever from him to any one therefor, security for his debt he had not stipulated for, and had no right to expect; and to deprive McCleary and Hill, without a consideration therefor to either of them, of a valuable right—a right to adjust between themselves, in their own way, their own affairs. I see no reason why they should be deprived of such a right; and I see no reason why Hoeldtke should have conferred upon him gratuitously such additional seecurity for his debt.

There are authorities which fully support the position taken by the majority of this court. But those cited by Judge Hodges as having been decided by the Supreme Court of the United States, I think, do not in the least, support it. As a matter of fact, the question presented by the record on this appeal was not before that court in either of the cases cited. In neither of them did it appear that the mortgagor had released his grantee from his undertaking to pay the debt due to the mortgagee. Those cases can be said to be applicable here only so far as the principles they discuss and apply, can be said to be applicable to the facts of this case. Applied so far, instead of supporting the position they have been cited as supporting, I think they strongly assail it as untenable. For, in one of them—Union Mutual Life Insurance Co. v. Hanford, 143 U. S., 192, 36 L. ed. 120,—Mr. Justice Gray declared it to be the settled law of that court that "the

grantee is not directly liable to the mortgagee, at law or in equity; and the only remedy of the mortgagee against the grantee is by bill in equity in the right of the mortgagor and grantor, by virtue of the right in equity of a creditor to avail himself of any security which his debtor holds from a third person, for the payment of the debt." If the mortgagee's remedy is in right alone of the grantor, it is difficult to see how, in this case, when the mortgagor no longer can claim a liability against his grantee, a liability on the part of the grantee nevertheless exists in favor of the mortgagee. And in another of the cases cited—Keller v. Ashford, 133 U. S., 610, 33 L. ed. 673—the same judge quotes at length, and approvingly from the opinion of Depue, J., in Crowell v. Hospital, 27 N. J. Eq. 650, where it was said that "the right of the mortgagee to enforce payment of the mortgage debt, either in whole or in part, against the grantee of the mortgagor, does not rest upon any contract of the grantee with him, or with the mortgagor for his benefit. . . . Recovery of the deficiency after sale of the mortgaged premises, against a subsequent purchaser, is adjudged in a court of equity to a mortgagee not in virtue of any original equity residing in him. He is allowed, by a mere rule of procedure, to go directly as a creditor against the person ultimately liable, in order to avoid circuity of action, and save the mortgagor, as the intermediate party, from being harassed for the payment of the debt, and then driven to seek relief over against the person who has indemnified him, and upon whom the liability will ultimately fall. The equity on which his relief depends is the right of the mortgagor against his vendee, to which he is permitted to succeed by substituting himself in the place of the mortgagor." The other case cited from the Supreme Court of the United States—Johns v. Wilson, 180 U. S. 445, 45 L. ed. 616,—not only does not in any way controvert or qualify the statements quoted from the opinions in the other two cases, but on the contrary cites said cases approvingly.

Entertaining the opinion expressed, I do not agree that the judgment of the trial court should be reversed. I think it should be affirmed.

### ON MOTION FOR REHEARING.

HODGES, ASSOCIATE JUSTICE.—In their motion for rehearing counsel for defendant Hill complain of our conclusions of fact with reference to B. S. McCleary's representations as to the existence of the note for $140 and its having been canceled. It is claimed that we did this defendant an injustice in concluding that the evidence was insufficient to show fraud on the part of B. S. McCleary, in deceiving Hill with reference to that note. Our attention is also called to some inaccuracies regarding the dates. This, however, is of no material consequence, and can not affect the result. The whole of the very elaborate argument presented by counsel is devoted to a discussion of the right of Hill to now escape liability upon his promise to pay the notes held by the plaintiffs in error, because B. S. McCleary falsely and fraudulently represented that the note for $140 had been paid at the time Hill purchased the land. We did not intend to rest our disposition of that particular question upon the insufficiency of the evidence to show that McCleary had made such representations, and that

they were untrue.  We think the result should be the same if it be conceded that McCleary made the false representations complained of, that Hill was ignorant of the truth and was misled as to the existence of the note referred to.  In order to relieve the defendant from the embarrassment which counsel apprehend may result from the language of the original opinion, we deem it proper to say that we have not concluded, as a matter of fact, that the evidence is insufficient to show that McCleary was guilty of fraud.  We leave that as an open question, one which we think it unnecessary to now decide.  The contract which Hill is now undertaking to have rescinded is not in an executory stage; its provisions had been at least, partially, if not wholly, executed.  Some of its stipulations had been substituted by another contract made by him and McCleary sometime afterward. The facts also conclusively show that at the time Hill and McCleary made their first contract, Hill obtained possession of two notes, aggregating something over $400.  He admits in his testimony that he realized on both of these notes and had used the proceeds.  It is also shown that the consideration which passed to McCleary in that transaction consisted, among other things, of a stock of goods all of which has apparently been disposed of.  It is evident from these facts that it is now impossible to place the parties *in statu quo* by a cancellation of the original deed from McCleary to Hill.  It is also true that Hill, not having assumed the payment of this $140, never became personally liable for it, and could have suffered no injury by a failure to have it canceled, except by an assertion of the lien against the property while he owned it.  This was not done.  The danger from that source passed away when Hill transferred the land back to McCleary, who was primarily and originally responsible for the payment of the note. Courts of equity will not interpose to rescind a contract for fraud, except where it becomes necessary to relieve the complaining party against some injury.  Atlantic Delaine Co. v. James, 94 U. S., 207; Henninger v. Heald, 52 N. J. Eq. 431, 29 Atl., 190; Wenstrom, etc., v. Purnell, 75 Md., 119, 23 Atl. 134; Bomar v. Rosser, 131 Ala. 215, 31 So. 430; Hairalson v. Carson, 111 Ga., 57, 36 S. E., 318; 2 Pomeroy Eq. Jur. sec. 898.

In the case of Delaine v. James, supra, the court used this language: "Cancelling an executed contract is an exertion of the most extraordinary power of a court of equity.  The power ought not to be exercised except in a clear case, and never for an alleged fraud unless the fraud be made clearly to appear, never for alleged false representations unless their falsity is certainly proven, and unless the complainant has been deceived and injured by them."  This language is quoted approvingly in a later case by the same court.  Mr. Pomeroy in his Equity Jurisprudence, in treating of the right to have instruments canceled and contracts rescinded on account of fraudulent misrepresentations, says:  "The statement of facts of which it consists must not only be relied upon as an inducement to some action, but it must also be one material to the interest of the party thus relying and acting upon it that he is pecuniarily prejudiced by its falsity, is placed in a worse position than he otherwise would have been.  The party must suffer some pecuniary loss or injury as the natural consequence

of the conduct induced by the misrepresentation. In short, the representation must be so material that its falsity renders it unconscientious in the person making it to enforce the agreement, or other transaction which it has caused. Fraud without resulting in pecuniary damage is not a ground for the exercise of remedial jurisdiction, equitable or legal. Courts of justice do not act as mere tribunals of conscience to enforce duties which are purely moral."

Even if we admit that McCleary fraudulently induced. Hill to enter into the contract for the purchase of the land in the first instance, and that Hill might, while the owner of the land, have sustained some damage from an assertion of the lien by the holder, that danger has all passed away and that situation now no longer confronts him. In speaking of the effect of McCleary's statement about the note, Hill says he did not think he would have taken the land had he known the truth.

It also appears that the rule permitting a cancellation for fraud will not be enforced where the rights of third parties have intervened. 2 Pomeroy, Eq. Jur., sec. 918; Navarro Pub. Co. v. Fishburn, 2 Posey, U. C., 596. If the conclusion reached in the original opinion, that Hoeldtke and Leach became creditors of Hill's during the time he owned the land, be correct, then his obligation to pay them is absolute. It is not claimed that they were parties to the fraud, hence, they cannot be prejudiced by any right of rescission which Hill might have against McCleary on account of fraud. We therefore conclude that under the circumstances as they now exist, however fraudulent the transaction may have been originally, and however clearly the facts upon which they rely to show fraud may have been proved, Hill cannot now avail himself of the right of rescission in order to escape liability for the debts which he assumed. The motion is accordingly overruled.

*Overruled.*

Writ of error granted; reversed and remanded.