JOHN ADRIANCE, GUARDIAN, v. JOHN W. BROOKS.

A parol contract to pay interest is valid, but a contract to pay interest on an account cannot be inferred from the previous dealings of the parties, wherein such interest was always allowed.

In an action against the guardian of a lunatic, the proper judgment is that the plaintiff have execution, and not that the judgment be paid in due course of administration. If the estate of a minor or lunatic was likely to be sacrificed by sales under execution, and to become insolvent when otherwise, and by sales under the direction of the County Court it might be sufficient to pay a greater portion of the claims, the District Court would doubtless have power to enjoin such sales, and order it to be sold on a reasonable credit.

Appeal from Brazoria. Action by appellee against appellant on an open account, contracted by the appellant's ward before he became a lunatic. The account contained a charge

of interest at the rate of ten per cent. per annum, on balance due at the end of each year, and the petition alleged that such charge had been the custom and course of dealing between the parties for ten years past. There was a verdict and judgment for plaintiff, including the interest; no instructions in record; statement of facts, showing that the course of dealing of the parties, the appellee being a merchant and the lunatic's factor for ten years past, was the only evidence of any agreement to pay interest.

*J. H. Bell*, for appellant.

*P. McGreal*, for appellee. I. The contract to pay interest may be inferred from circumstances, the usage of trade, a course of dealings of the parties. (Sedgwick on Damages, 394; 3 Caines, 225; Mills v. Brown, 2 Penn. R. 548; Norvell v. Griswold, 6 Johns. R. 45; Knight v. Mitchell, Const. R. 668; 1 Conn. 32; 2 Vermont, 536; Smith's Mercantile Law, 535.)

The Court below, having found that the parties had contracted for interest at ten per cent., this Court will not set aside the judgment merely because the contract or convention to pay interest was by parol.

II. The statute provides no method of enforcing or collecting debts against the estate of a lunatic, and must therefore be governed by the general law, and an execution is the only remedy known to the law by which to make the debt.

HEMPHILL, CH. J. The grounds for reversal which require notice are,

1st. That the Court erred in allowing interest on the claim sued upon.

2nd. In decreeing execution on the judgment, whereas the decree should have been that the guardian pay the debt in the due course of the settlement of the estate of the person "*non compos*," in the County Court.

Although there is some diversity of statement, still it seems the better opinion, that at one time, in England and in the other States of Europe, it was unlawful to take for the loan of money or other commodity, any kind of interest—or usury as it was then called. (Kelly on Usury, p. 112; Hawkins, Book 1, C. 32; Hume, Chap. 33.)

It was prohibited, as repugnant to the Divine Law. In criminalty, it was considered next to murder; and if one, after his death, were found to have been a habitual usurer, his goods were forfeited to the King. (Tomlin's Dict. USURY.)

The Church uttered its anathema, and the State levelled its forfeitures against usury or the taking of any interest, great or small. But, notwithstanding the denunciations and punishments to which it was subjected, yet it could not be suppressed, and the community, instead of being benefitted by these prohibitory laws, was seriously aggrieved, the lenders of money being forced to charge the most exorbitant rates by way of compensation for the risks incurred. (Kelly, p. 24–26; Escriche Dicc. *Verbo* INTERES.)

The statute of the 37 Henry 8, C. 9, was the first which rendered the demand of interest lawful, and it may be questioned whether this was the result of more enlightened views as to the justice, honesty or advantages of letting money at interest, or whether it was not rather the dictate of policy—that as the vice could not be suppressed, it should be tolerated, but with many and severe restrictions.

This Act (and the same may be said of most of the succeeding statutes of England on the subject of interest) is negative in its character. It sanctions interest indirectly, by declaring that not more than -- per cent. shall be taken for the loan of money or other commodity. It does not declare affirmatively, in what cases interest shall be taken, nor does it positively require it to be paid in any case. In Rensaler Glass Factory v. Reid, 5 Cowen, p. 609, Senator Spencer, in a very masterly and elaborate opinion, contended that inasmuch as neither by the Common Law nor by the statute was a party required to

pay interest in any case, it followed inevitably that in no case could he be made legally liable to pay interest as such, without his own agreement to that effect that the allowance of interest by the Courts, as an incident of the debt, was founded solely on the agreement of the parties; that there were other cases in which interest was allowed by juries as a measure of damages, as for instance in actions of tort or on contract where there has been fraud, injustice or delinquency; but these depend on principles wholly distinct from those in cases where interest is allowed by the Court as an incident of the debt, and they should not be confounded with each other.

Without adverting particularly to the diversity and conflict of opinion which have prevailed as to the cases in which, under the English and similar statutes, interest should be allowed, we will merely state that in the case before us, if considered with reference to the provisions of such statutes, interest would be allowed on the ground of implied agreement; this agreement and intention to pay interest being inferred from the course of dealing between the parties, interest having been frequently charged and paid without objection in former and similar accounts. (Chitty on Contracts, p. 561.)

The question arises whether, under the laws of this State, interest, as such, or as it may be termed, as an incident of the debt, can be allowed on this claim? When the laws of Spain were abrogated, and the Common Law introduced, in 1840, how then stood the law in relation to interest? Waiving, for the present, the consideration of the Act of the Republic " to regulate interest," which went into operation simultaneously with that law, it seems to me that independent of that statute, and on the principles of the modern Common Law, it would be competent for parties to bind themselves by agreement to pay interest for the loan or use of money or other commodity. The demand of interest is no longer regarded as against either natural or Divine Law. The Church has ceased its, and the State its prohibitions against any but an excessive rate of interest, and even against that the pains and censures have been

stripped of the greater portion of their severity. The scruples of the middle ages have worn away, and it is universally acknowledged that the use of capital, at a moderate rate of interest, has a potent influence in advancing industry and commerce, and in the development of individual and national wealth. With this radical change of public opinion and total subversion of ancient prejudices, it would be strange if the taking of interest did not stand on a different footing from that occupied by it when it was regarded as an infamous and sacrilegious crime. And the reasons against interest having utterly ceased, and having fallen with the other superstitions of the middle ages, it would seem that the principles of law forbidding it should also cease, and that on the general principles of law, which recognize the right of parties to contract, and enforce their contracts, an agreement to pay interest would be valid although not expressly sanctioned or authorized by statute.

But the Act of 1840 undertook to regulate the subject of interest, and unlike the English statute of 37 Henry 8th, it gave an affirmative and not an indirect and negative sanction to its allowance. It differed also from the English statutes by dividing interest into two classes, viz: that which is allowed by law, and that which may be agreed upon by parties; and there was the further distinction, not known to the earlier English statutes, that the contracts on which the law provided that interest should be recovered, or in which the parties might stipulate for interest, should be written contracts. But though provision is made for the recovery of interest on written contracts, yet there is no prohibition of a stipulation for the payment of interest on a verbal agreement or on a contract not in writing. And if such an agreement be not criminal—or contrary to good morals or public policy, it would seem that it should be binding; and accordingly, in Pridgen v. Hill, (12 Tex. R. 374,) which was a suit on an account upon which the party had agreed to pay interest, it was held that such agreement was valid and might be enforced in law. In the previous cases of Cloud v. Smith & Adriance, 1 Tex. R. 102; Close

v. Fields, 2 Id. 232; Adriance v. McGreal, 3 Id. 487; Davis
v. Thorn, 6 Id. 486, 487; 10 Id. 33, the question, of·a verbal,
distinct, positive agreement to pay interest on a debt acknowl-
edged to be due was not presented, and although there are ex-
pressions in the opinions in those cases which would seem to
restrict the recovery of interest to debts on written contracts, and
such is the general rule under the statute, yet we deem it no
departure from the principle of those decisions, with reference
to the facts then before the Court, to hold, when a new fact is
presented, viz: an·agreement to pay interest, that it shall be
enforced though it be not in writing, nor was the debt on which
it was stipulated in writing, such agreement not being pro-
hibited by law, nor subversive of sound policy or good morals.

The right of parties to make their own contracts, whether
in writing or by words, when not forbidden by law, is unques-
tionable.   And to hold that a debtor could not stipulate to
pay interest on a verbal contract, when the demand of interest
is in itself lawful, and its recovery on such contracts is not
prohibited, would be a serious infringement of such rights.
True, the statute has provided for the recovery of interest on
contracts in writing, but it has not declared that it should be
recoverable only on such contracts, or excluded the right of
agreeing to pay interest on a verbal contract.

But the subject is one which may be, and, as we have seen,
has been regulated by statute.   This has provided for the stip-
ulation and recovery of interest on written contracts.   And
on the grounds stated, we have also supported verbal agree-
ments to pay interest.   But this case is neither upon a writ-
ten contract, nor was there any agreement to pay interest.
The ground upon which it is claimed is the fact that the de-
fendant had previously paid interest on similar accounts.   This
we deem insufficient.   Had the contract been in writing, the
statute would have allowed interest; or had he verbally agreed
to pay, we would not have permitted him to violate his en-
gagements.   Thus far we will go beyond the cases expressly
provided for by the statute.   But we will not go further, and

scrutinize the acts of parties, to judge whether an implied obligation to pay interest, as an incident of the debt, has been created.

Parties, by reducing their contracts to writing, will come within the pale of the statute, or if they agree to pay, their stipulations will be enforced; but we will not raise agreements from their acts, and then enforce them.

The second ground of error, viz: in decreeing execution on the judgment, instead of directing it to be paid in the due course of settlement of the estate of the ward, has been considered by us with the attention which its importance requires; and although the question is not free from doubt, yet we are of opinion that there is no error in the judgment.

That the estate of a minor or of a person "*non compos*" should be placed on the footing of a succession, and that debts against such estate should be paid only in the due course of its administration, would seem but just and reasonable.—That such provision in relation to successions accords with sound policy can scarcely be questioned. It has long been the law of this State, and in all the modifications of the law in relation to the estates of deceased persons, this feature has been preserved. There does not appear to be any valid reason why its beneficial operation should not be extended to the estates of minors and lunatics; and it would equalize the law in relation to estates under the control of trustees or agents. But it does not satisfactorily appear that such provision has been made by law, or that such has been the intention of the Legislature. The Probate Law of 1849 directed judgments to be paid currently with other claims against a succession; but the same law having provided that the estates of minors should not be sold without certain formalities, declared that such provision did not extend to the case in which a judgment had to be executed against the minor. (Sec. 63, Hart. Dig. Art. 1501.)

The Probate Law of 1846 provided that judgments against an executor or administrator should not have priority, but

should be paid currently with other claims of the same degree, but the provision was not extended to judgments against guardians.

In the Act to regulate proceedings in the District Court there is a provision to the following effect, viz: that "in suits "against executors, administrators or guardians, for the re- "covery of money due from, or damages incurred by their "testator or intestate, or ancestor, the judgment shall be that "the plaintiff recover his debt or damages as the case may be, "and costs to be paid in due course of administration." From this it would appear that there was in the legislative mind some floating intention that judgments against guardians, executors and administrators should all be placed on the same footing. But the intention does not appear to have been definite, or to have been declared in such a manner as to be entitled to the force of law. The judgments against executors and administrators are to be in suits for the recovery of money due from or damages incurred by their testators or intestates. The only other description of persons left in the Section on the account of whom the guardian could recover is the ancestor. Of course this has no meaning with reference to a guardian. The counterpart of ancestor is heir, not guardian. It was the manifest intention of the statute to prescribe the particular judgments which should be paid in the due course of administration. This it has done with reference to executors and administrators, but has failed to do with reference to judgments against guardians. It appears also from the remaining portion of this and from the succeeding Section, that judgments against executors and administrators were alone within the contemplation of the Legislature. There is no subsequent provision by which the existing law on the subject could be regarded as modified, consequently there is no sufficient ground upon which the judgment in the Court below can in this particular be modified. When the estate of a minor or a person "non compos" is likely to be sacrificed by sales under execution, and to become insolvent, when otherwise and by sales

under the direction of the County Court, it might be sufficient to pay a greater portion of the claims, the District Court would doubtless have power to enjoin such sales, and order it to be sold on a reasonable credit.

We are of opinion that the judgment should be re-formed so far as it allows interest, and that in all other particulars it be affirmed, and that the appellee pay the costs of this Court.

Reversed and re-formed.