THE FIRST NATIONAL BANK of Sing Sing, Respondent, *v.* THOMAS H. CHALMERS et al., Appellants.

Where a debtor transfers property to a third person, in consideration of an agreement of the latter to assume and pay the debt, and he thereupon promises the creditor to pay, he makes the debt his own, and so assumes an independent duty of payment irrespective of the liability of the principal debtor, and becomes primarily liable for the discharge of the debt.

Such an agreement, therefore, is not simply a promise to answer for the debt or default of another; and so, is not within the provision of the Statute of Frauds.

The firm of S. & Co., manufacturers, had given to defendants, to secure various items of indebtedness, mortgages upon its real estate, and a chattel mortgage on the machinery and personal property used in the manufacture of its goods. Said firm also owed defendants an unsecured indebtedness and was indebted to plaintiff. The members of said firm proposed to transfer to defendants all its property, provided plaintiff and certain other creditors were protected. To this defendants agreed, and promised to assume and pay the debts specified; they elected to take, instead of a bill of sale, a confession of judgment. This was executed by the members of the firm, who, by their verified statement, swore that they were indebted to the defendants in a sum made up of all their indebtedness to defendants, and of the debts so assumed by the latter, and the firm thereupon turned over to defendants all of its property. At that time the chattel mortgage was not due, and contained no danger clause permitting an immediate seizure. Defendants thereafter promised plaintiff to pay its claim against said firm. In an action to recover the amount thereof, *held,* that defendants' promise to pay was an original one, made upon a good consideration, and so, was not within the Statute of Frauds, and was valid and effectual without a writing.

The confession of judgment was set aside on motion of a junior creditor. Defendants accepted short notice of the motion, and suffered it to be granted by default. *Held,* that the rights of plaintiff were not affected thereby.

(Argued December 17, 1894; decided January 15, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made at the May term, 1893, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Circuit without a jury.

A *mem.* of the case on a former appeal appears in 120 N. Y. 658.

This action was brought upon an alleged agreement made by defendants for a valuable consideration to pay to plaintiff the amount of an indebtedness of the firm of Charles Spruce & Co. to it.

On October 30, 1882, said firm, being financially embarrassed, confessed judgment to defendants for various sums due them and for amounts owing to other parties. The statement on which the judgment was entered, under the head of "Liabilities assumed," set forth, among other items, the following: "Money due by Charles Spruce & Co. to First National Bank of Sing Sing on overdrawn account, $1,556.47."

The court found that defendant made an absolute, unconditional promise to pay plaintiff's debt.

Further facts are stated in the opinion.

*Calvin Frost* for appellants. The doctrine of *stare decisis* is the only one which can possibly be invoked by respondent, and it is difficult to see how it is controlling in this case. (*Worrall* v. *Munn*, 53 N. Y. 185.) This case comes within the operation of the Statute of Frauds, which declares void every promise to answer for the debt of another, unless it is in writing and signed by the person sought to be charged. (*Blyer* v. *Monholland*, 2 Sandf. Ch. 526; *Lawrence* v. *Fox*, 20 N. Y. 268; *Burr* v. *Beers*, 24 id. 179; *Mallory* v. *Gillett*, 21 id. 412; *Garnsey* v. *Rogers*, 47 id. 233; *Acker* v. *Parmenter*, 98 id. 425; *Fullam* v. *Adams*, 37 Vt. 391; *Halsey* v. *Read*, 9 Paige, 445; *Vrooman* v. *Turner*, 69 N. Y. 284; *Wheat* v. *Rice*, 98 id. 302.) There was no consideration for the promise of defendants. The only consideration claimed was the giving of the confession of judgment, which was invalid. (Code Civ. Pro. § 1273; *Ward* v. *Mitchell*, 117 N. Y. 439; *Gifford* v. *Corrigan*, 105 id. 227; *McKnight* v. *Develin*, 52 id. 399; *Dunning* v. *Leavitt*, 85 id. 30–35; *Crowe* v. *Lewin*, 95 id. 427; *Loeb* v. *Willis*, 100 id. 235.)

*Francis Larkin* for respondent. The judgment by confession was valid and drawn in compliance with the Code. (Code Civ. Pro. § 1274; *Read* v. *French*, 28 N. Y. 285; *Hopkins* v. *Nelson*, 24 id. 518; *Miller* v. *Earle*, Id. 110; *McKee* v. *Tyson*, 10 Abb. Pr. 392; *Sheldon* v. *Stryker*, 34 Barb. 116; *Dunham* v. *Waterman*, 17 N. Y. 9; 3 Wait's Pr. 691, 694; *U. Bank* v. *Bush*, 36 N. Y. 631; *Mitchell* v. *Van Buren*, 27 id. 300; *Williams* v. *Herman*, 33 How. Pr. 241; *Nat. P. Bank* v. *Salaman*, 23 N. Y. S. R. 566; *Hoppock* v. *Donaldson*, 12 How. Pr. 141; *Marks* v. *Reynolds*, 12 Abb. Pr. 403; *Frost* v. *Koon*, 30 N. Y. 428.) The case has been settled by the Court of Appeals. (31 N. Y. S. R. 526.)

FINCH, J. What constitutes an original promise, upon which the Statute of Frauds does not operate, and which, therefore, may be valid and effectual without a writing, is fairly settled in one direction at least. Wherever the facts show that the debtor has transferred or delivered to the promisor, for his own use and benefit, money or property in consideration of the latter's agreement to assume and pay the outstanding debt, and he, thereupon, has promised the creditor to pay, that promise is original, upon the ground that by the acceptance of the fund or property under an agreement to assume and pay the debt the promisor has made that debt his own, has become primarily liable for its discharge, and has assumed an independent duty of payment irrespective of the liability of the principal debtor. (*Ackley* v. *Parmenter*, 98 N. Y. 425; *White* v. *Rintoul*, 108 id. 223.) In such a case the debt has become that of the new party promising; his promise is not to pay the debt of another, but his own; as between him and the primary debtor the latter has become practically a surety entitled to require the payment to be made by his transferee. The consideration of the primary debt, by the transfer of the money or property into which that consideration had been in effect merged, may be said to have been shifted over to the new promisor, who thereby comes

under a duty of payment as obvious as if such original consideration had passed directly to him.

The question before us, therefore, is whether the promise of the defendants, made to the bank, to pay the debt due it from Leary and Spruce, was founded upon such a transfer of property as I have above described, and thus was original, or whether it was not so founded and must for that reason be deemed collateral.

We are bound to assume upon the findings that the promise to pay was absolute, and clean of condition or contingency. The question whether it was made at all was severely litigated, and depended upon the conclusion to be drawn from testimony full of violent contradictions; and we are not at liberty to review the determination of fact which affirms that the promise to pay was in truth made, and was absolute in its terms as sworn to by the witnesses on the part of the plaintiff. As to the substance of the agreement between the defendants and the primary debtors there is also contradiction. The former assert that their assumption of the debt went no further than a consent to pay it out of the proceeds of the debtor's property after the discharge of their own debt; or, in other words, that their agreed liability was to pay plaintiff only out of proceeds when realized, and even then out of any possible excess remaining over and above their own debt. If that is true they were under no present duty to pay the bank when the promise was made; the debt had not become theirs; might never become theirs; and so their verbal promise to the bank was purely collateral and to answer for the debt of another. That proposition was quite distinctly held in *Ackley* v. *Parmenter* (*supra*), and upon the authority of *Belknap* v. *Bender*, (75 N. Y. 446), which disclosed an agreement simply to pay out of proceeds when realized, and so far as sufficient. On this branch of the case the inquiry turns upon the facts, and the findings fail to disclose any such agreement, but establish the contrary. They determine that for a valuable consideration, and by an agreement with Leary and Spruce, the defendants agreed to pay the plaintiff the debt due to it.

This finding is free of any condition, and imports an absolute agreement to pay at once and in full, and so negatives the defendants' version of the facts. It is sustained by the testimony of the plaintiff's witnesses, and is strongly corroborated by the form of the confession of judgment which the defendants' attorney drew, which they accepted, upon which they issued an execution, and which provides for an assumption of the bank debt absolutely and without condition. All the requisites of an original promise, unaffected by the Statute of Frauds, were thus explicitly embraced in the findings, except one. It is not in terms or expressly found that the consideration, described simply as valuable, was, beyond that, such a consideration as would avoid the statute because it consisted of a transfer to the defendants for their own use and benefit of the debtors' property. That fact is involved in the findings, since it is essential to the legal conclusion, which cannot stand without it. We may look into the evidence, therefore, to see whether it would have sustained such a finding if it had been explicitly made, and thereupon assume the fact in support of the judgment. (*Ogden* v. *Alexander*, 140 N. Y. 356.)

I can find in the proof no express agreement in words transferring the real and personal estate of the firm to the defendants, but that there was such a transfer in fact is abundantly established and beyond any reasonable doubt. The situation appears to have been this. Leary and Spruce were manufacturers of files. The defendants in New York were the regular purchasers, at established rates, of their whole product. The manufacturers became seriously indebted to their vendees in the progress of the business, and, as security therefor, had given to them a mortgage on their real estate for $2,500, dated in 1876, and payable in one year; a second mortgage on the same land for $5,000, dated in April, 1882, and payable in one year; and, as collateral to the last-named security, a chattel mortgage for $5,000 covering all the machinery and personal property used in the manufacture of files. The stock on hand and the equity of the mortgagors still remained to them. There was due, or to become due, on these securities

about the sum of $7,400 at the date of the final arrangement of October, 1882, assuming that all the debt created prior to their dates was protected by the mortgages. But an added indebtedness, not covered by the securities, had later accrued in the form of two notes and one indorsement, amounting to about $4,200, no part of which had matured on October 30th, 1882. On that day the debtors announced to the defendants their inability to pay. Of course the statement created alarm. None of the mortgages secured future advances, and the defendants found themselves unsecured creditors to the amount of over $4,000. The chattel mortgage was not due and contained no danger clause permitting an immediate seizure. The whole stock on hand, manufactured and unmanufactured, was incumbered by no lien, and that and the equity under the mortgages belonged to the debtors, was open to attack, and could be disposed of by the firm. They estimated the entire value of their property at $16,000, which was the footing of their last preceding inventory, and claimed it to be sufficient, not only to pay the defendants in full, but also the bank and certain other creditors whom they wished to protect. They were talking of an assignment, but assured the defendants that they were ready to give them a bill of sale of all their property, or any other security, provided that the bank and other named creditors were protected. The defendants agreed to assume and pay those debts, and chose instead of a bill of sale to take a confession of judgment. In that the debtors swore that they were justly indebted to the defendants in a sum made up of the total debt to the latter, and of the debts to other named creditors, which the defendants had assumed and agreed to pay. Had the transaction stopped at this point it would be difficult to support the promise to the bank, unless upon the ground of an intended purchase by the defendants of the debtors' assets, the price of which was secured by the confession of judgment. But it did not stop there. The defendants could at once have levied upon the whole personal property, and advertised a sale of the real estate, but all that was needless, because the debtors at once turned over the

whole property to the defendants, and put them in entire and complete possession for their own use and benefit. Leary abandoned it utterly and went away. Spruce remained as the hired servant of the defendants, working for wages which they cut down at their pleasure, obeying their orders, shipping the whole manufactured product to them in New York, drawing on them for the pay roll, and treating the property in all respects as theirs. Not a vestige of it ever came back to the debtors. The latter were willing to transfer it, as their offer of a bill of sale proves; they did transfer it, and, in the light of the confession of judgment and the promise to the bank, it is impossible not to see that it was in consideration of an agreement by the defendants to pay the specified debts.

I have not failed to consider the attempted explanation of Chalmers and the argument about it of his counsel. The former sought to put himself in the attitude of a tenant under Spruce as landlord, to claim that his wages of twenty dollars a week were in part for rent, and to show that the goods were sold to him by Spruce as before the failure. But the latter, though unwillingly, controverted the theory, and Chalmers' own version of the facts does not harmonize with the explanation made. The claim that Spruce was to remain owner and work out the debts does not account for Leary's abandonment of the possession, nor Spruce's service for wages, still less for the instant assumption and payment of all expenses and exercise of complete control by the defendants. They took all the products, and if they continued to keep the accounts in the old way it was but a natural measure of convenience in order to separate the factory business from their own, and be able to ascertain its ultimate results. They took the confession of judgment as a guard and protection against other creditors, and as a defense of the transfer made to them. They issued no execution at once because that was needless to attain possession, but did issue it later when their title was threatened. That all this was done upon an understanding and agreement in accord with the facts seems to me a natural and necessary inference.

Nor have I overlooked the fact that the confession of judgment was set aside on the motion of a junior creditor. The defendants' attorney, after a consultation with his clients, accepted short notice of the motion, and then suffered it to be granted by default. The probabilities are that the proceeding was collusive, but if not, it was one of the risks which the defendants assumed and is immaterial to the result.

I have reached my conclusion without reliance upon the previous decision of this court on the first appeal, (120 N. Y. 650), and without any reference to the doctrine of *Lawrence* v. *Fox*, which has played some part in the discussion. The opinions of the Second Division on the former appeal indicate that a majority of the court did not agree upon any one proposition discussed. I should treat that judgment as decisive if it had decided, but the only authoritative determination was the order for a new trial. I do not deem the doctrine of *Lawrence* v. *Fox* involved in this controversy. That doctrine applies where no express promise has been made to the party suing, but he claims the right to rest upon a promise between other parties having respect to the debt due to him and as having been made for his benefit. It struggles to obviate a lack of privity upon equitable principles, but is needless and has no proper application where the privity exists, and a direct promise has been made upon which the action may rest. Here we have the promise and if it is valid the whole problem is solved.

I think the promise proved and found rested not only upon a valuable consideration, but one of such character as to make the promise original and save it from the condemnation of the Statute of Frauds.

The judgment should be affirmed, with costs.

All concur, except Haight, J., not sitting.

Judgment affirmed.