JAMES v. CHANEY et al.

(Court of Civil Appeals of Texas. Texarkana. Feb. 8, 1913. On Motion for Rehearing, March 6, 1913.)

1. MORTGAGES (§ 529*) — FORECLOSURE — VALIDITY—INSANITY OF MORTGAGOR.

While ordinarily a mortgagor's insanity is insufficient ground for setting aside a sale made under a deed of trust, a sale was properly vacated where the land, which was worth from $2,500 to $3,000, was sold to the mortgagee for $101, subject to a prior mortgage for $1,450.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1537–1548; Dec. Dig. § 529.*]

2. HOMESTEAD (§ 115*)—LIENS—SUBJECTS.

Commissions paid to procure a loan for the purpose of a homestead, constituting no part of the original contract for the purchase, cannot be secured by a lien on the homestead.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 183, 184, 186–190; Dec. Dig. § 115.*]

3. INSANE PERSONS (§ 100*)—ACTIONS—JUDGMENTS—PAYMENT.

Rev. St. 1895, art. 2727, which provides that a judgment against a ward shall be filed with the clerk of the court in which guardianship is pending, and entered upon the claim docket as other claims are entered, applies only where a guardianship is actually pending; and hence, in an action against an insane person, it was error to direct payment of judgment in the due course of guardianship proceeding, where it appeared that no guardian had ever been appointed.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 179–184; Dec. Dig. § 100.*]

Appeal from District Court, Wise County; J. W. Patterson, Judge.

Action by T. L. James against J. L. Chaney and another. Judgment for defendants, and plaintiff appeals. Reformed and affirmed.

McMurray & Gettys, of Decatur, for appellant. R. E. Carswell, of Decatur, for appellees.

HODGES, J. This is an action instituted by the appellant against J. L. Chaney and wife to recover a tract of land situated in Wise county. The appellant deraigns title

through a sale under a deed of trust which had theretofore been executed by J. L. Chaney. The pleadings having disclosed that J. L. Chaney was insane, he was represented at the trial by R. E. Carswell, as guardian ad litem. After a general denial and a plea of not guilty, Mrs. Chaney alleged that the sale made by the trustee under the deed of trust above mentioned was invalid; that W. A. Bonner, the owner of the debt secured by the trust deed, was the purchaser; that at the time the debt was contracted and the deed of trust executed J. L. Chaney was insane and incapable of attending to his business affairs, and at the time. the sale was made he was confined in a lunatic asylum; that these facts were known to Bonner and to those claiming under him. The answer concluded with a prayer that the deed of trust be canceled, and if this could not be done, that the sale thereunder be set aside. Plaintiff replied in a supplemental petition containing general and special demurrers and a general denial, and alleged, in substance, that the lands in controversy had been acquired by J. L. Chaney from one W. T. Robinson on September 12, 1905; that as a part of the consideration Chaney gave his notes, maturing on different dates thereafter and aggregating $1,900; that Chaney, being unable to meet the last five notes, procured a loan of $1,300 from the Commonwealth Fire Insurance Company, for which he executed a series of notes payable to the Commonwealth Fire Insurance Company, and bearing interest at 8 per cent. per annum from date. The first note was for $150, and matured on January 5, 1911; another note for an equal amount was due January 5, 1912; another for $200 was due January 5, 1913; another for $800 was due January 5, 1915. These notes were given in renewal of the original purchase-money notes formerly held by Robinson. A deed of trust was given upon the land in controversy to secure the payment of the notes as they matured.

The petition proceeds as follows: "That the Bonners, a firm composed of W. A. Bonner and Shearon Bonner, as loan agents and brokers, negotiated the said transaction hereinbefore related for said Commonwealth Fire Insurance Company and said Chaney, and by agreement of all of said parties said Bonners became the owners and entitled to 2 per cent. out of the 10 per cent. interest thenceforth to accrue on said notes, aggregating the $1,-300 still due as aforesaid, as part of the purchase price of the said lands in question. That the said interest was so separated that the notes executed to said trustee for the said fire insurance company provided for the payment of only 8 per cent. for said company, and the other 2 per cent. belonging to and to be paid to said Bonners was evidenced by a certain promissory note then made and executed to said Bonners by said Chaney in the sum of $101, payable in five installments as follows: $26, due on the 5th day of January, 1911; $23, due on the 5th day of January, 1912; $20, due on the 5th day of January, 1913; $16, due on January 5, 1914, and $16, on January 5, 1915, and interest at 10 per cent. on all sums past due thereon, and the said J. L. Chaney then and there executed and delivered to Shearon Bonner, as trustee, as security for said note a deed of trust on the said 180 acres of land in question, and fully empowered the said trustee to sell the said lands in satisfaction of said note in the event of a default in its payment, and providing for the appointment of a substitute trustee to make such sale in the event the said trustee named should refuse so to do. That the said installment note provided that a failure to pay any installment when due would mature all of said installments at the option of the Bonners. That on January 5, 1911, when the $150 note to said Commonwealth Fire Insurance Company, and the $26 installment on the said Bonners note, as well as $104 interest on said insurance company's notes, became due, an entire default was made in the payment of same, or any part thereof. That said Chaney and wife, as well as their relatives and friends, were repeatedly notified and urged to pay the said indebtedness so matured, but they and all of them failed and refused so to do, and the said Vernon Chaney announced that she had abandoned all intention of attempting to pay the said indebtedness or to hold the said place, which said expressed intention she caused to be conveyed to and made known to the Bonners and S. M. Gose, substitute trustee under the deed of trust. That upon said default the Bonners elected to, and did, declare the entire amount of the said $101 note made to them due and payable, and said land was duly sold by said substitute trustee under the said deed of trust securing said note, and was bought by W. A. Bonner for the sum of $101, his said offer being the highest and best bid, and that it being understood that said sale was made and the title to said lands conveyed subject to said $1,300 indebtedness and accrued interest thereon due said Commonwealth Fire Insurance Company, and the said conveyance was so made." It is then alleged that W. A. Bonner thereafter sold the land to Portwood, and Portwood sold to the appellant, James. The special answer also denies that Chaney was insane at the time the deed of trust was executed and at the time of the sale. It also denies that any of the parties above mentioned had any knowledge of his insanity, if he was insane. The petition concludes with a prayer that in the event the court should hold the sale invalid the appellant be subrogated to all of the rights of the holder of the debts which he alleges have been paid by him and Portwood, from whom he purchased.

Mrs. Chaney filed a supplemental answer, which, among other things, alleged that the property was the homestead of herself and

her insane husband, and for that reason claimed that the mortgage given to the Bonners was void. She repeats her allegations as to the insanity of J. L. Chaney and the irregularities charged with reference to the sale.

The case was tried before the court without a jury. No separate findings of fact and conclusions of law were filed, but in his judgment the court specifically makes the finding that J. L. Chaney was not mentally unsound at the time he executed the deed of trust and the notes mentioned in the pleadings, but that he was insane and was confined in an asylum at the time the sale was made. He concludes, therefore, that the sale and conveyance should be set aside, and enters an order in accordance with that conclusion. The subsequent portion of the judgment is as follows: "But it appearing to the court that plaintiff and those under whom he claims have paid off and discharged two of the original notes of $150 each by J. L. Chaney to the Commonwealth Fire Insurance Company, which notes are set out and described in the mortgage given by said Chaney to I. Jalonick on January 5, 1910, to secure the same, together with the interest due on the same at the date of maturity, and that they have also paid the sum of $128, being the interest due for the years ending January 5, 1911, and 1912, respectively, on the note for $800 described in said mortgage, also the sum of $32, being the interest due for the years ending January 5, 1911, and 1912, respectively, on the $800 note described in said mortgage, also the sum of $24, interest due for the years ending January 5, 1911, and 1912, respectively, on the two notes for $150, each described in said mortgage, and the sum of $49, being the installment of $26 and $23, respectively, due January 5, 1911, and 1912, with note for $101, given the said Bonners and described in the mortgage to Shearon Bonner, all of which notes and payments with the interest due thereon amount to the sum of $575.25, it is therefore considered by the court that plaintiff T. L. James be, and he is hereby, subrogated to the rights of the said insurance company and the said Bonners as the same existed into said notes so paid, and that such payments are secured by the mortgage given by said J. L. Chaney to said Jalonick and said Bonners, respectively, and it is considered by the court that the plaintiff, T. L. James, do have and recover of defendant J. L. Chaney said sum of $575.25, and it is ordered that the same bear interest at the rate of 10 per cent. from this date, and that the mortgage lien so held by plaintiff on the lands hereinafter described be, and the same is hereby, foreclosed to secure said sum, and that said sum be paid in due course of the guardianship of the estate of J. L. Chaney, and it is ordered that plaintiff pay all costs incurred herein, up to January 11, 1912, for which let execution issue. It is further ordered

and adjudged that plaintiff do not recover the attorney's fee prayed for, or any of the remaining items sued for. And it is ordered that defendant J. L. Chaney pay all costs incurred herein since said date, January 11, 1912, and that the same be paid in due course of the guardianship of the estate of said Chaney."

The evidence shows, as alleged in the pleadings, that in 1905 Chaney and wife purchased the land in controversy, consisting of 180 acres, from W. T. Robinson, the consideration being $600 cash and $1,900 to be paid in installments thereafter. In January, 1910, Robinson transferred the notes to Haynes, and the latter assigned $1,300 of the debt to the Commonwealth Fire Insurance Company. Renewal notes were given by Chaney to the insurance company, as specified in the pleadings. The deed of trust was also executed on the land to secure the payment of those notes as they matured. On the same date Chaney executed a note for $101 to the Bonners, payable in five installments, the installments maturing on the same dates as those specified in the notes given to Robinson. A deed of trust covering the same property was given to the Bonners for the purpose of securing this note. In June, 1910, J. L. Chaney was formally adjudged insane, and has continually since then been confined in a lunatic asylum. The installment which matured on January 5, 1911, was not paid. On April 4th the land was advertised and sold by the substitute trustee, S. M. Gose, acting under the trust deed given to the Bonners. It was purchased by W. A. Bonner, his bid being $101, the amount of the note given by Chaney. A few days after this Bonner sold to Fred Portwood, the consideration expressed in the deed being $296.-50 cash and the assumption by Portwood of the balance due to the insurance company. On the 24th of the same month Portwood sold to the appellant, T. L. James. The deed recited a cash consideration of $2,775 paid, and the assumption by James of the indebtedness due the insurance company and of Portwood's note for $75 due to Bonner.

The evidence justifies the conclusion that both Portwood and James, as well as Bonner, knew that at the time the sale was made J. L. Chaney was confined in the lunatic asylum, and they also knew that the land was being occupied by Mrs. Chaney and her family as a homestead.

[1] There was no evidence of any irregularity attending the sale of this land under the deed of trust held by the Bonners. It may be inferred from the language used in the judgment rendered that the trial judge based his conclusion that the sale should be set aside upon the fact that Chaney was at the time insane, was confined in an asylum, and was without any guardian to look after his property rights, and upon the further fact that the property sold for a sum considerably less than its value. The insanity

of the grantor alone is not generally considered sufficient to justify setting aside a sale made under a deed of trust. Vanmeter v. Darrah, 115 Mo. 153, 22 S. W. 30; Lundberg v. Davidson, 72 Minn. 49, 74 N. W. 1018, 42 L. R. A. 103; 2 Jones on Mortgages, § 1793. The author last cited says: "The insanity of a mortgagor occurring after the making of the mortgage cannot, of course, have any effect greater in revoking or suspending the power of sale than his death would have. Neither does an application by a guardian or committee of the lunatic for an order to sell the mortgaged premises for the benefit of his creditors have any effect to deprive the mortgagee of this summary means of realizing his claim. Of course if the mortgagee, or any . one else, takes an unjust and improper advantage of such condition of the mortgagor, this will be ground for setting aside the sale by suit in equity."

We are referred by the appellees to the following Texas cases: Houghton v. Rice, 15 Tex. Civ. App. 561, 40 S. W. 349 and 1057; Adriance v. Brooks, 13 Tex. 286. Houghton v. Rice was an action of trespass to try title, brought by one who claimed title under an execution sale. The facts showed that the execution debtor was insane at the time of the sale. The property was found to be worth $2,925, and sold for the sum of $685. Of this sum $46 was paid as costs, and the remainder credited on the judgment. The trial in the district court resulted in a judgment in favor of the defendant. Justice Fisher in affirming the case intimates the opinion that a sale under an execution at the time the defendant is insane, and without a guardian to look after his interests, should not be sustained under any circumstances, but predicates the affirmance upon the fact that the defendant was insane in connection with the inadequate consideration for which the property was sold. A writ of error was refused by the Supreme Court. The other case referred to is less in point.

Courts are more exacting with the creditor, and more vigilant in guarding against sacrifices of property, where the debtor is at the time a forced sale is made under some disability which places him at a disadvantage, or renders him powerless to protect his property interests. Under the facts of this case it would be difficult to say as a matter of law that the court below was not warranted in setting aside this sale. The inference is clear from the record that Chaney at the time of the sale had no guardian, and that no one was present to represent him upon that occasion. It is also conclusively shown that the property was bid in by Bonner, the mortgagee, for the amount of his debt, which was only $101. After paying the costs, the balance of this sum was credited on the judgment. It is true that this sale was made subject to a prior incumbrance in favor of the insurance company amount-ing, in principal and interest, to approximately $1,450. The land is shown to have been worth from $2,500 to $3,000; in fact, the appellant shows that he paid in property, and the assumption of the debt outstanding against it, more than $3,000. These facts probably justified the court in concluding that the sale was unfair to the unfortunate mortgagor, and that in justice to him it should be set aside.

[2] But there is another ground disclosed by the record which we think is sufficient to sustain that portion of the judgment. We refer to the homestead claim set up by Mrs. Chaney and the guardian ad litem. The pleading of the appellant in his first supplemental petition shows conclusively that the debt due to the Bonners, and to secure which this deed of trust was given, was no part of the original purchase money for the land. W. A. Bonner in his testimony seemed to treat it as interest on the loan procured from the insurance company; but, when that transaction is stripped of all disguise, the note for $101 merely represented the commission due to the Bonners for having negotiated the loan from the insurance company to Chaney. This fact is made plain by the first supplemental petition itself. The loan was for only $1,300, and was made direct from the insurance company to Chaney. That the property was at the time the loan was made the homestead of Chaney and his family is not controverted. It was so designated in the application for the loan, and the evidence shows that it has been continuously occupied since that time by Chaney's family. Commissions which form no part of the original contract for the purchase of the homestead cannot be secured by a lien thereon. They are entitled to no more consideration in that respect than attorney's fees contracted after the homestead right is acquired; and it has been held that these cannot be made a lien on the homestead. Bullard v. Mayne, 49 S. W. 522; Walters v. Association, 8 Tex. Civ. App. 500, 29 S. W. 51; Harn v. American Mutual Bldg. & Savings Ass'n, 95 Tex. 79, 65 S. W. 176. The deed of trust which Bonner attempted to foreclose being void, the court committed no error in setting aside the sale.

[3] We are not called upon to determine whether or not the court committed any error in adjudging the lien in favor of the appellant for the amount the latter had paid on the debt due from Chaney to the insurance company, and to the Bonners also, as no complaint is made of that portion of the decree by the appellees. But we think the court did err in providing that the judgment should be paid in the due course of the guardianship proceedings. The only legitimate inference deducible from the record is that no guardian had ever in fact been appointed for Chaney. Article 2727 of the Revised Civil Statutes of 1895 is as follows: "When a claim has been established by judg-

ment a certified copy of such judgment shall be filed with the clerk of the court in which the guardianship is pending, and entered upon the claim docket as other claims are entered." That provision has reference to cases where a guardianship is actually pending.

The order setting aside the sale made under the trust deed, and that portion of the judgment subrogating the appellant to the lien held by the insurance company and awarding a recovery and foreclosure of the lien against Chaney, will be affirmed. The judgment will be reformed so as to allow attorney's fees on the amount paid by appellant on the debt due to the insurance company only, and which had been paid by him, and by eliminating that portion of the judgment which directed that it be satisfied in the due course of the guardianship. The costs of the court below will stand as they are adjudged, but the costs of this appeal will be adjudged against the appellees.

## On Motion for Rehearing.

Responding to the earnest and elaborate argument presented by counsel for appellant in their motion for a rehearing, we have again carefully considered the effect of the homestead rights of Chaney upon the validity of the lien sought to be foreclosed upon the property in controversy. If our previous conclusion that the deed of trust held by the Bonners was invalid is correct, it logically follows, not only that appellant acquired no title to the premises from those who claim under the trustee's sale, but is not entitled to be subrogated to any lien against the land for any sum which he may have paid in discharging the Bonner debt. The facts bearing upon this question may be thus briefly stated: Chaney owed $1,600 of the purchase money due on his homestead. He made a written application through Gose Bros. of Decatur, agents of the Bonners, for a loan of $1,400, with interest at 10 per cent. This application showed that Chaney was the head of a family, and the property sought to be incumbered was designated as the homestead. The application was presented to the Bonners, and they recommended a loan of only $1,300 by the insurance company. That company loaned that sum directly to Chaney, taking his four promissory notes—two for $150 each, one for $200, and another for $800—each note bearing interest at the rate of 8 per cent., and all secured by a trust deed on the homestead. On the same day the Bonners took the following note: "$101.-00. Dallas, Texas, Jan. 5th, 1910. For value received I promise to pay the Bonners, or order, at their office in the city of Dallas, Dallas county, Texas, the sum of one hundred one and no/100 dollars, with New York exchange, in five installments, payable as follows, to-wit: $26.00 on Jan. 5th, 1911; $23.00 on Jan. 5th, 1912; $20.00 on Jan. 5th, 1913; $16.00 on Jan. 5th, 1914; $16.00 on Jan. 5th, 1915; without interest, if each installment is paid when due; but if any of said installments shall not be paid when due then all sums herein agreed to be paid shall become due and payable at once, and bear interest at the rate of ten per cent. per annum from the date hereof until paid, and in case this note is placed in the hands of an attorney, or foreclosure had, I agree to pay 10 per cent. of the whole amount due as attorney's fees. This note is secured by a deed of trust on real estate in Wise county, Texas, and is made and executed under, and is to be construed in accordance with the laws of the state of Texas. J. L. Chaney."

This last-mentioned note represents exactly 2 per cent. of the $1,300 loaned by the insurance company. It was secured by a separate deed of trust, in which a different trustee was named. The original purchase-money notes to the amount of $1,300, which had been given by Chaney to W. T. Robinson when he purchased the property, and afterwards held by Charley Haines, were transferred and delivered to the insurance company. It appearing from the foregoing facts that the note to the Bonners being for no part of the principal sum advanced to take up and extend the original purchase-money debt, it could not be secured by a lien on the homestead, unless it can be treated as a part of the interest to accrue on the principal sum which had been advanced. Interest is defined by our statute as the compensation allowed by law, or fixed by the parties to a contract, for the use or forbearance or detention of money. Article 3097, Rev. Civ. Stat. 1895. In order to treat the consideration expressed in this note as interest on the principal sum it must appear either that the Bonners loaned the money to Chaney, and charged him interest at the rate of 10 per cent. per annum, of which the note held by them was a part, or that the insurance company loaned the money, charged interest at the rate of 10 per cent., and assigned the 2 per cent. which entered into the note held by the Bonners to them as compensation for their services. In their argument counsel for appellant contend that the Bonners were the real parties who made the loan, and that they stipulated for a 10 per cent. interest rate; that they procured the money from the insurance company, which was satisfied with only 8 per cent. There is no pretense that the insurance company made any agreement with the Bonners by which it assigned to them any part of the interest it was entitled to receive as consideration for the $1,300 loaned.

The question then is reduced to this inquiry: Did the Bonners furnish the money to Chaney? It is true W. A. Bonner testified that his firm made the loan, but the details of the transaction given by him show that this statement was merely a conclusion

on his part. The application for the loan begins as follows: "I, J. L. Chaney, of Paradise, Texas, hereby constitute and appoint Gose Brothers of Decatur, Texas, my agent to procure for me a loan of $1400.00, or such sum more or less as he may hereafter accept, for six years at ten per cent., payable annually. * * * I hereby authorize the lender to pay said Gose Brothers the proceeds of said loan if made, and I hereby ratify all that my said agents may do in the premises." W. A. Bonner testified that Gose Bros. were their agents at Decatur. He further stated: "The loan was at 10 per cent. Eight per cent. of that went to the Commonwealth Fire Insurance Company, and 2 per cent. each year went to us. I see my report is that I recommended to the company that they loan Chaney $1,300, payable January 5, 1911, $150; January 5, 1912, $150; January 5, 1913, $200; January 5, 1915, $800. I then wrote to Gose Bros. that I had approved the loan for $1,300, payable as above stated, and Gose wrote me back that Chaney would accept it, and I wrote up the papers and sent them up here to Decatur. I figured tue 8 per cent. on $1,300 on the note to the company, and then the other 2 per cent. that we were to have was put in an installment note payable to the Bonners for the amount of $101." Again he says: "My understanding was that the company was advancing the money to take up these notes and be subrogated in Haines' place, who held the purchase-money indebtedness against this land—the holder of the notes. I was not buying the notes. We took new notes. We just made a loan to take up these notes. I held those notes for the purpose of producing evidence that it was purchase money I advanced. Our company charged 10 per cent. for the money loaned; have done it all the time. We don't make any loans for less than 10 per cent. I have got to pay the other man 8. I have got to have at least 2. I paid Gose 2 per cent. commission. We pass on the titles, fix up the papers, attend to the loan and collect it for the five years it runs. * * * The purpose of the whole transaction was to advance Chaney a loan of $1,300. We sent him a draft for that amount. We take a straight note in all cases for the 2 per cent. commission, and did in this case; and a straight deed of trust to secure it, with Shearon Bonner as trustee." This evidence clearly shows that the insurance company advanced the money to Chaney, made the loan, and became subrogated to the lien which it discharged. The rate of interest charged by it is shown in the notes given by Chaney as 8 per cent. per annum. From these facts we conclude that the consideration expressed in the note to the Bonners was not interest on the sum advanced by the insurance company, but commissions charged by the Bonners for the services rendered by them in procuring the

loan, for which the homestead could not be incumbered.

The motion for a rehearing is therefore overruled.