## BARBER et al. v. FEDERAL LAND BANK OF HOUSTON et al.

### No. 6271.

Court of Civil Appeals of Texas. Texarkana.
May 28, 1947.

Rehearing Denied June 12, 1947.

Collins, Dies, Williams & Garrison, of Lufkin, James & Lee, of Tyler, and Fred Whitaker, of Carthage, for appellants.

Brachfield, Wolfe & Williams and C. L. Brachfield, all of Henderson, Harry A. Berry, of Houston, Long & Strong, of Carthage, Vinson, Elkins, Weems, Francis, Thomas Fletcher and R. K. Batten, all of Houston, for appellees.

HALL, Chief Justice.

This action was instituted by Jim Barber, as next friend of Edward Letcher Barber, and numerous other parties at interest against the Federal Land Bank of Houston, hereinafter referred to as Land Bank, and other claimants to (a) set aside a sale of land under deed of trust given by R. B. Armstrong (now deceased) and his wife, Lula Armstrong, to the Land Bank and to cancel the deed given pursuant to said foreclosure, (b) to reform said deed of trust by omitting therefrom the 100-acre tract out of the northeast corner of the first tract described therein and to include a 100-acre tract out of the northwest corner of said first tract, and decreeing said deed of trust as so reformed to be a lien upon the land described as it existed on June 4, 1935, (c) to reform the deed from R. B. Armstrong and wife, Lula, to Edward Letcher Barber and wife, Illa Lee, so that the land described therein corresponds to that set out in the deed of trust as reformed; for judgment in favor of Barber and wife against all parties herein claiming said 100 acres. omitted from the deed of trust as originally written, and canceling the deed from the substitute trustee to the Land Bank; the deed from the Land Bank to the appellee R. F. Shaw, and all oil interests subsequently conveyed by Shaw to the Land Bank as a cloud on appellants' title, (d) judgment in favor of Lula Armstrong, widow of R. B. Armstrong, deceased, and their heirs for the 100 acres in the northeast corner of the first tract described in the deed of trust as originally executed, and (e) judgment for the value of the oil, gas and other petroleum products purchased, removed and appropriated from said property. The trial court sustained certain exceptions directed by appellees to appellants' plead-

ings. Appellants refused to amend and the cause was dismissed by the court.

The record reveals that on March 13, 1922, R. B. Armstrong and wife, Lula, executed and delivered to the Land Bank a deed of trust describing among other lands a tract of 369 acres less 100 out of the northwest corner, to secure their note to the Land Bank for $5,900. On November 4, 1929, R. B. Armstrong, Sr., and wife, Lula, conveyed the land described in the deed of trust to Illa Lee Barber and husband, Edward Letcher Barber, two of the appellants, in consideration of $489.38 cash, and the assumption by them of the indebtedness due at the time by R. B. Armstrong, Sr., and wife to the Land Bank. Barber and wife became delinquent in their payments to the Land Bank during the year 1934; the Bank exercised its option contained in the deed of trust, declared the whole indebtedness due, and on May 2, 1935, advertised the land to be sold on June 4, 1935. The land was sold on June 4, 1935, to the Land Bank, as highest bidder, for $4,000 which sum was credited on the indebtedness due by the Barbers to the Bank. On June 10, 1935, the land was conveyed to the Bank by A. C. Williams, substitute trustee, and on May 6, 1936, the Land Bank conveyed the land to R. F. Shaw, one of the appellees, for a consideration of $827.35 cash, and one vendor's lien note for the sum of $3,000, retaining for a period of five years one-half of the minerals in and under said land. It is also provided in said deed to Shaw that after the expiration of the 5-year period the Land Bank's mineral interest in the land (no production having occurred) was automatically reduced to one-sixteenth interest in the minerals. The other appellees hold mineral interests from and under Shaw and the Land Bank.

By their first point appellants complain of the action of the trial court in sustaining exception to paragraph five, subdivision one, of their second amended original petition wherein it is alleged that Edward Letcher Barber was, on the date of the foreclosure of the deed of trust lien, and for several years prior thereto, a person of unsound mind. In their second amended original petition appellants allege "at the time of said attempted foreclosure and for several years prior thereto the plaintiff, Edward Letcher Barber, was of unsound mind, notoriously insane, and mentally incompetent to transact any character of business or to understand the nature and effect of any business transaction, and was wholly incompetent mentally to take any steps to prevent a foreclosure of said deed of trust lien and conveyance of said land." In their trial amendment appellants alleged "Edward Letcher Barber became of unsound mind, that is to say became insane, on January 1, 1930, and continued thereafter to be an insane person and a person of unsound mind until January 1, 1944." Among others, appellees directed the following exception to the above allegations of insanity, "That said allegations, if true, could not be or become at law or in equity a predicate for the cancellation of a foreclosure sale conducted in accordance with the contractual power contained in the deed of trust from Armstrong and wife to the Federal Land Bank at Houston." It is obvious that the rights of the Land Bank were in no wise abridged or diminished by the sale of the property described in the deed of trust to the Barbers and the assumption by them of the indebtedness due by the Armstrongs to it. Hampshire v. Greeves, 104 Tex. 620, 143 S.W. 147. Neither would the insanity of Barber at the time of the sale of the property under the power contained in the deed of trust enlarge his rights. Quoting from Moye v. Goolsbee, Tex.Civ.App., 124 S.W.2d 925, 927 (writ refused): "It is not believed that she being mentally incompetent in any way increased her right, but same remained as if she had at all times been in full possession of her mental faculties, and the default in the payment of the notes had occurred, as it did, and the rescission had followed such default." In our opinion the foregoing statement is equally applicable to a foreclosure and sale under a power contained in a deed of trust. After Barber's default the Land Bank could foreclose its deed of trust lien and sell the property in satisfaction of the indebtedness due it without regard to his mental condition. "The right of sale given in a mortgage is a valuable right acquired by contract inuring to the mortgagee, and cannot be impaired

by any subsequent act of the mortgagor with regard to such property." Hampshire v. Greeves, supra [104 Tex. 620, 143 S.W. 150]. If insanity of the original mortgagor would not prevent a sale under the power contracted for in the deed of trust, certainly the position of his grantee who had assumed the obligation of the deed of trust, and later became insane, would not be improved. Furthermore, Barber's act in assuming the indebtedness secured by the deed of trust lien as a part of the purchase price of the land had the effect of giving to said lien the quality of a vendor's lien in favor of the Land Bank and "such lien could not be rescinded (by his grantor) without the consent of the Land Bank." Etter v. Tuck, Tex.Civ.App., 101 S.W.2d 843; James v. Chaney, Tex.Civ.App., 154 S.W. 679 (writ refused); Kern v. Smith, Tex.Civ.App., 164 S.W.2d 193 (writ refused); see also 41 C.J., p. 928, Sec. 1348½c. Appellants' first point is overruled.

By several points appellants complain of the action of the trial court in sustaining certain exceptions to their allegations attacking the foreclosure and sale of the land by the substitute trustee and the attorney in fact appointed by him.

 It is alleged by appellants that "A. C. Williams, who purported to act as substitute trustee in the attempted foreclosure and sale of said land and in the execution of the said deed to the Federal Land Bank of Houston, acted without authority in that he had never been legally appointed substitute trustee in keeping with the provision of said deed of trust. The provisions of said deed of trust required that the appointment of a substitute trustee shall be 'by written instrument, duly recorded in said (Panola) county.'" From the exhibits attached to appellants' petition it appears that A. C. Williams was appointed substitute trustee on May 2, 1935, to succeed M. H. Gossett, deceased. On the same date Williams as substitute trustee advertised the property for sale at the courthouse door in Panola County and appointed J. H. Wooten as his attorney in fact to act for him in conducting the sale. The certificate of the County Clerk of Panola County reveals that the "written instru-

ment" appointing A. C. Williams substitute trustee as well as the "written appointment" of J. H. Wooten, attorney in fact, were "filed for record," on June 4, 1935, at 10 o'clock a. m. Williams' appointment as substitute trustee was recorded June 7, 1935, at 10:10 o'clock a. m., and Wooten's appointment as attorney in fact was recorded June 5, 1935. Pursuant to the advertisement for sale, the property was sold at the courthouse door in Carthage, Panola County, Texas, on June 4, 1935, "within the hours provided for by law," for $4,000 to the Land Bank, which amount was credited by said Bank on the indebtedness due it by Barber and wife. The term "within the hours provided by law" could mean nothing more nor less than "between the hours of ten o'clock in the forenoon and four o'clock in the afternoon." Thus we think the clear presumption raised from the pleadings is that the property was sold after the written appointment of Williams as substitute trustee was filed for record in Panola County. There is no provision in the deed of trust requiring the recording of the written appointment of the substitute trustee before the sale is consummated. The Land Bank was given full power to appoint a substitute trustee "by a written instrument, duly recorded in said county," and as stated above, Williams' appointment as substitute trustee was by a written instrument dated May 2, prior to the sale by his attorney in fact, Wooten, on June 4th. It is seen that more than one month's time elapsed between the date of Williams' appointment and the date of sale, affording ample time for posting notices of sale as required by R.S. Art. 3810. Furthermore, if it be the contention of appellants that the recording of the written appointment of the substitute trustee was necessary to give notice to appellant of such fact, then we think that the filing for record of the written appointment was sufficient to effect such purpose. We think the cases of Casas v. Federal Land Bank, Tex.Civ.App., 106 S.W.2d 1107, and Tom v. Kenedy National Farm Loan Association, Tex.Civ. App., 123 S.W.2d 416, and cases cited therein, afford ample authority for our holding that the appointment of Williams as substitute trustee and the appointment of

his agent and attorney in fact was in compliance with the provisions of the deed of trust. These points are overruled.

Appellants' seventh point is directed to the action of the trial court in sustaining exceptions to their pleading with respect to alleged mutual mistake of the parties by including in the deed of trust and the deed from the Armstrongs to the Barbers the 100 acres in the northeast corner of the first tract, comprising a part of the homestead of the Armstrongs and omitting the 100 acres in the northwest corner of the first tract. Appellants averred that by reason of such mutual mistake in the description of the property it was calculated to prevent persons from bidding at the sale under the deed of trust since a portion of the property covered by the deed of trust was a part of the homestead of the Armstrongs. As heretofore stated, both of these instruments included in their description of the land conveyed 100 acres out of the northeast corner of the first tract and excepted 100 acres out of the northwest corner of that tract. The 100-acre tract in the northeast corner comprises a part of the homestead of the Armstrongs and it was alleged by appellants' that this 100 acres should be excluded from both conveyances. It was intended by the parties to include in these instruments the 100 acres in the northwest corner, which' was excluded. This error was also present in the deed from the substitute trustee to the Land Bank and in the deed from the Land Bank to appellee Shaw. Attached to appellants' second amended petition and made a part thereof is a correction deed, dated May 20, 1944, between R. B. Armstrong and wife, Lula, and R. F. ·Shaw, whereby Shaw, grantee of the Land Bank, quitclaims to Armstrong and wife the 100 acres out of the northeast corner described in the deed of trust and subsequent deeds, down to and including the one from the Bank to Shaw, and Armstrong and wife convey the excluded 100 acres out of the northwest corner to Shaw. Appellants alleged that the Barbers purchased the land from Armstrong and wife subject to the deed of trust in favor of the Land Bank, and as a part of the purchase price assumed the payment of the debt secured by the lien. This being true, they are in no position to question its validity, either as to the lien itself or the property described therein. When the Barbers accepted a deed to the land from Armstrong and wife, containing the recitation of their assumption of the outstanding indebtedness evidenced by a note due by Armstrong and wife to the Land Bank, it constituted an unconditional promise on their part to pay said note according to its terms. The Barbers' assumption became an absolute contractual undertaking. Hoeldtke et al. v. Horstman et al., 61 Tex. Civ.App. 148, 128 S.W. 642, affirmed, Hill v. Hoeldtke, 104 Tex. 594, 142 S.W. 871, 40 L.R.A.,N.S., 672. In the case cited last above, the late Justice Hodges of this court quoted with approval from First National Bank of Sing Sing v. Chalmers, 144 N.Y. 432, 39 N.E. 331, [61 Tex.Civ.App. 148, 128 S.W. 645] as follows: "Wherever the facts show that the debtor has transferred or delivered to the promisor, for his own use and benefit, money or property in consideration of the latter's agreement to assume and pay the outstanding debt, and he thereupon has promised the creditor to pay, that promise is original, upon the ground that, by the acceptance of the fund' or property under an agreement to assume and pay the debt, the promisor has made that debt his own, has become primarily liable for its discharge, and has assumed an independent duty of payment, irrespective of the liability of the principal debtor."

Spann v. Cochran, 63 Tex. 240, opinion by Judge Stayton; Rice-Stix Dry Goods Co. v. First National Bank of McGregor, Tex.Com.App., 231 S.W. 386; Straus v. Brooks, 136 Tex. 141, 148 S.W.2d 393; see also Alt v. Banholzer, 36 Minn. 57, 29 N.W. 674. Since appellants, Barber and wife, are in no position to question any of the terms and conditions of the deed of trust held by the Land Bank they could not be concerned about the 100-acre tract in the northwest corner, which was the subject of the exchange of deeds between Armstrong and wife, Lula, and Shaw. Certainly Mrs. Armstrong cannot complain of the omission of the 100 acres in the northwest corner from, and the inclusion of the 100 acres. in the northeast corner for the reason

that she was a party to the arrangement whereby this was corrected. We conclude then that the exchange of the deeds between Armstrong and wife, Lula, and Shaw, the parties at interest, was legally sufficient to cure the alleged error in the description contained in the deed of trust. This point is overruled.

■ Appellants by their tenth point assert that the trial court erred in sustaining exceptions to their pleadings wherein they allege that the trustee's sale and the deed executed pursuant thereto were void and should be canceled (quoting from their brief) "for the reason that the $4,000.00 credited by the Federal Land Bank on the above described indebtedness as a consideration for such deed to it was wholly inadequate and shockingly out of proportion to the value of the land at the time, which was of the reasonable cash market value of $65,000.00." It is appellants' contention, and they so plead, that the inadequacy of the sale price at the foreclosure sale, together with the alleged mental condition of Barber at the time, furnish ample grounds for setting aside the sale. As heretofore stated, the highest bid for the land was $4,000 and was made by the Land Bank. This amount was credited by the Bank on the indebtedness owing to it by the Barbers by virtue of their assumption of the Armstrong obligation. Appellants alleged the value of the land on the date of sale to be $65,000. Attached to appellants' second amended petition, and made a part thereof, is a deed from the Land Bank to appellee R. F. Shaw, executed about one year after the foreclosure, which recites a consideration of $3,825.35, with reservation of one-half interest "in and to all oil, gas or other minerals, in, to and under, and that may be produced from the land hereinabove described for a period of five years from May 6, 1936," and if no production occurred during the five-year period and the mineral interest retained by the Land Bank would be reduced to one-sixteenth, and this interest presumably the Land Bank now holds. As heretofore stated, the insanity of Barber occurring after he had assumed Armstrong's obligation under the deed of trust would in no wise affect or limit the power of sale contained therein. James v. Chaney, supra; Kern v. Smith, supra; Van Meter v. Darrah, 115 Mo. 153, 22 S.W. 30. This averment when read in connection with the attached deed from the Land Bank to Shaw reciting a consideration of $3,827.35, plus the mineral interest retained, in our opinion, would not raise an issue of fact for the jury. This point is overruled.

■ In addition to what we have stated in the foregoing opinion, we think there is still another reason why the judgment of the trial court must be affirmed. In their trial amendment appellants allege that "Edward Letcher Barber and Illa Lee Barber Bryan were lawfully married to each other on March 13, 1929, and were husband and wife from the date of the purchase of the property in controversy by them from R. B. Armstrong and wife, Lula Armstrong, *and continued to be husband and wife until the marriage relations were dissolved by decree of divorcement on March 21, 1938.*" (Italics ours.) By this averment appellants rely upon the verity and legality of the judgment of divorce of March 21, 1938, as fixing the status of Edward Letcher Barber and Illa Lee Barber Bryan as single persons. Illa Lee Barber Bryan, in reliance upon said divorce judgment, has since married one Lee Bryan. This fact appearing on the face of appellants' pleading raises the legal presumption that on the date the divorce decree was entered both parties thereto were of sound mind. How else could a legal divorce decree have been entered? On the date the decree of divorcement was entered the statutes of this State prohibited a divorce where either spouse was insane. R.S. of Texas, Art. 4629 (prior to 1941 amendment); Young v. Young, Tex.Civ.App., 41 S.W.2d 367. So, if Edward Letcher Barber were either plaintiff or defendant on the date the divorce was granted and was also insane the decree would be a nullity. In our opinion, appellants having plead the divorce decree as fixing the status of Barber and wife, they are bound by the implications and presumptions it carries with it. So, as we view the pleading set out above, it is tantamount to an allegation that on the 21st day of March, 1938, Edward Letcher Barber was a person of

sound mind. This being true, the statutes of limitation pleaded by appellees would effectively bar appellants' alleged cause of action.

All other points advanced by appellants having been carefully examined, are overruled.

The judgment of the trial court is affirmed.